[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 212 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 213 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 216 
It has long been settled that upon a policy against loss by fire, no recovery can be had unless the insured has an interest in the subject insured at the time of the loss; the contract is regarded as one for an indemnity to the amount insured, and unless the insured has an interest at the time of the loss, he is not damnified and cannot be entitled to recover. (2 Philips onInsurance, 601; 3 Kent's Com. 371; 2 Atkyns, 534.) When Garratt sold all his interest in the property insured he most certainly avoided the policy as to himself: he no longer had any interest in the property which could be damaged by fire; he could lose nothing, and could not therefore claim damages.
As a general rule, whenever a contract is made to two jointly, each can release or destroy the contract so that no action can be sustained on it. If there be two obligees in a bond, either can discharge the whole on any terms he pleases, so that no action can be had on it. If he wrongfully releases, his co-obligee will be entitled to a remedy against him, but the obligor is discharged as to both. So it is a rule in pleading, that the plaintiff or plaintiffs must aver every fact necessary to show a right to recover, and every such necessary averment must be proved. In conformity with that rule, the plaintiffs in this case, in the second count of their declaration, aver "that from the time of making the said last mentioned policy until and at the time of the loss thereinafter mentioned, and during the time said policy was in force, the said plaintiffs owned and were interested in the property in said policy of insurance mentioned, to a large amount, to wit, to the amount of $4000." This averment cannot be struck out as surplusage. The plaintiffs were bound to prove it in some way; or at all events, if it was disproved the plaintiffs could have no right to recover. It was in evidence that one of the plaintiffs on the 3d of October, 1840, conveyed one half of the insured property to the other defendant in error. Thus it was proved, that after the making of the policy and before the loss, one of the insured had *Page 217 
parted with all his interest in the property insured, and this disproved the averment that the plaintiffs were interested in the property at the time of the loss. The evidence showed that only one of them had an interest. Whether he might not have maintained an action in his own name is not now material to inquire. The question is, whether an action can be sustained in the names of both when one has no legal interest in the suit. The joint interest in the property insured was destroyed when one conveyed all his interest to the other. That act, in which both concurred, rendered it impossible that a loss could afterwards happen within the meaning of the policy; the joint property of the insured could not thereafter be destroyed by fire, because they had no such property. In the case of Howard Ryckman v. The AlbanyInsurance Company, (3 Denio, 301,) it was held that an action could not be maintained in the names of two, after one had conveyed all his interest in the property insured to the other. That case cannot in principle be distinguished from this.
In general, the action on a contract must be brought in the name of the party in whom the legal interest in such contract is vested. (1 Chit. on Pl. 3.) The moment that Garratt sold all his interest in the property insured, he ceased to have any interest in the contract of insurance. And I have not been able to discover a single case in which a person having no legal interest, has been allowed to maintain an action at law alone or with others. There are many cases where a person having no equitable interest may be a plaintiff in an action at law. For example, an obligee in a bond assigns the bond, yet an action at law can be brought in his name, because the bond, not being assignable at law, he is regarded at law as the owner of the bond so far that a suit may be maintained in his name. So if there be two obligees and one assigns all his interest in the bond to the other, yet he is regarded at law as the joint owner of the bond, and must be a plaintiff in an action on the bond, although in equity, he has parted with all his interest in the bond. But in this case, when Garratt sold his estate in the mill, his whole legal and equitable interest in the mill passed to his vendee; he retained no interest in the mill or policy, either *Page 218 
legal or equitable. The conveyance of the mill did not operate as an assignment of the policy, but as a destruction of it; his legal and equitable interest in the policy was gone.
If one of two owners of a mill who are jointly insured, sell his part to a stranger, it may appear like a hardship, that such sale should destroy the policy, but it is no more than happens in all cases in which there are joint promisees, covenantees or obligees, and one of them discharges the promise, covenant or bond. If one be injured by the act of the other, he has a remedy against the wrongdoer. In this case, however, both the promisees concurred in the act which destroyed the joint remedy on the contract, and neither has any just ground of complaint. The purchaser in this case might, by complying with the 7th section of the charter of the defendants, have secured to himself the full benefit of the policy, and sued in his own name.
In the case of Jessel v. The Williamsburgh Ins. Co., (3Hill, 88,) the insured had assigned the policy with the consent of the insurer, and then a loss happened, and the court held that the assignee could not sue in his own name, the legal title being in the assignor. In the case of the Jefferson Ins. Co. v. H. D. Cotheal (7 Wend. 72,) the policy was made to H. D. Cotheal, or whom it might concern, and if any loss happened it should be paid to them. A loss did happen, and they were allowed to recover for the whole loss, although they owned but half of the property insured. They had the legal title to the policy, and a recovery in their names might be, in part or in whole, for the benefit of others.
The case of the Traders' Ins. Co. v. Robert, in error from the superior court in the city of New-York, (9 Wend. 404,) shows how solicitous the courts of law are to protect the equitable rights of assignees; and it may well be doubted, whether the court in that case did not go too far in order to protect the assignee. In that case, Thomas Robert, on the 1st of June, 1827, mortgaged certain houses to Francis Bolton to secure the payment of $5500. On the 5th of June, in the same year, he effected three policies against fire, and on the same day, with the consent of the insurers, assigned the policies to Francis Bolton. One of the policies covered two houses. After these *Page 219 
policies were assigned, and before any loss, Thomas Robert insured the same property in The Phoenix Fire Insurance Co., of which he gave no notice to the plaintiffs in error, and that neglect of his would have avoided the prior policies had he not assigned them. Two of the houses which were insured together at $2200, were destroyed by fire, and the assignee of the policy brought an action in the name of the insured to recover for the loss. On closing the preliminary proofs, the defendants moved for a nonsuit on the following, amongst other grounds. 1st. That the declaration averred that the interest in the subject matter insured was in the plaintiff, and the proof showed that he hadabsolutely parted with his whole interest previous to the loss. 2d. That the declaration averred that he had not made any other insurance, and the proof showed the contrary; and 3d. That the declaration averred that the plaintiff, in the affidavit by him made, stated that no other insurance had been made on the same property, whereas the affidavit on the trial set forth another insurance effected by the plaintiff. The motion was denied, and a verdict and judgment recovered in the superior court, to the amount of the loss, and that judgment was affirmed in the supreme court. In the opinion given in the supreme court, no notice whatever is taken of the first ground upon which the motion for a nonsuit was made; on the contrary, that court say, "the only difficulty in the case grows out of the fact that the policies on which this suit was brought were assigned to the mortgagee of the premises, and that the mortgagee subsequently insured his remaining interest in another office, without giving notice to the defendants." This the court held did not avoid the first policy, which had previously been assigned with the assent of the insured, to Francis Bolton. That after such assignment, the assignor could do no act to defeat the rights of the assignee. Whether, if the insured had after the assignment sold all his interest in the subject insured, an action could have been maintained in his name, was not decided, unless that question was decided under the general words in the opinion, that no subsequent act of the assignor could prejudice the rights of the assignee. But that case rests upon very different principles, from those applicable to *Page 220 
this case. In that case, the policy had been regularly assigned; in this case no assignment of the policy was made, but the interest of one of the insured was sold to the other, and the grantee of the subject insured does not as such grantee acquire any rights as to the policy. On this ground, I think the judgment ought to be reversed.
There is another ground on which a new trial ought to be granted. The conditions annexed to the policy formed a part of it. This was so held in the case of Roberts v. Chenango MutualInsurance Company, (3 Hill, 501.) The conditions in that case, as in this, were on the same sheet with the policy, but there was no express reference in the policy to the conditions annexed. (5Hill, 193.) In the case of Snyder v. The Farmers' Insurance Loan Co. (13 Wend. 94,) it is said, "the proposals and conditions attached to the policy form a part of the contract." In this case the conditions of insurance were annexed to the policy, and one condition is, that if after the insurance is effected "the risk of the property shall be increased by any means whatever within the control of the assured, c. then the insurance shall be void." In this case, after the insurance the insured built a barn and shed near the mill, which the insurers insisted increased the risk; and one witness testified that he should think the hazard was increased. The judge, however, ruled that although the risk was increased, the erection of the barn was no defence," as the plaintiffs had a right to build on their own premises." In this we think the judge erred. The jury should have been instructed that if in their opinion the risk was increased by the erection of the barn, that the policy was thereby avoided. The question whether the risk be increased belongs to the jury. (5 Hill, 10.) A new trial, therefore, ought to be granted, costs to abide the event of the suit.