CELIA BILLET, RESPONDENT AND APPELLANT, v. PENN-
SYLVANIA FIRE INSURANCE COMPANY, APPELLANT
AND RESPONDENT.

Argued March 19 and 20, 1925—Decided May 18, 1925.

1. C. B., through her husband as her agent, insured her Buick car
against loss by theft. Afterwards a locking device was attached
to the car. This decreased the risk of theft. C. B. applied for
a lock warranty rider for the policy. This was sent by the in-
surer, and a rebate in the premium of the policy made. The
rider provided that "in consideration of the reduction in premium
it is warranted by the insured that the automobile insured under
this policy will be continuously equipped with a locking device
*   *   *. The insured undertakes during the currency of this
policy to use all diligence and care in maintaining the efficiency
of said locking device and in locking the automobile when leaving
same unattended." The key of the locking device had been
broken for two weeks. No effort to have it repaired was made.
The car was left in a public street in Newark unattended. It
was stolen. In a suit instituted by C. B. against the insurer
to recover the value of the car, the trial court left to the jury
the question of whether under the circumstances all diligence
had been used by C. B. in maintaining the efficiency of the lock-
ing device and in locking the car when leaving same unattended—
*Held*, error. The evidence being uncontroverted the question
was one for the court, and not for the jury. The court should
have directed a verdict for the defendant.
2. C. B. claimed the lock warranty rider was not received. There
was evidence that it was ordered and mailed. The court ad-
mitted secondary evidence of its contents. *Held*, that the ad-
mission of secondary evidence was a proper exercise of the
court's discretion.
3. The trial court held that the rider was a part of the policy.
The facts being uncontroverted, this was a question for the
decision of the court.

On appeal from the Supreme Court.

For the appellant, *William E. Holmwood.*

For the respondent, *Vanderbilt & Hedden.*

The opinion of the court was delivered by

KATZENBACH, J. On January 4th, 1921, the Pennsylvania Fire Insurance Company issued to Celia Billet, of the city of Newark, a policy insuring her Buick coupe against loss by theft, robbery or pilferage for the period of one year. The policy was procured by her husband, Isidore Billet, through his insurance brokers. Mr. Billet had full authority to act for Mrs. Billet, and had the sole charge, management and control of the insured car. About three weeks after the policy was issued Mr. Billet purchased a device for locking the car known as a "tilt lock," and had it placed upon the car. The use of this locking device decreased the risk of theft. It also lessened the cost of insurance. After the car was equipped with the "tilt lock" device, Mr. Billet called his insurance brokers on the telephone and asked to have a lock warranty rider added to the policy. He also asked that the premium for the insurance be reduced because of the addition of the lock warranty. The lock warranty rider was issued. A credit of $6 was given upon the insurance premium. The lock warranty rider contained the following provision: "In consideration of the reduction in premium it is warranted by the insured that the automobile insured under this policy will be continuously equipped with a locking device known as  *  *  *. The insured undertakes during the currency of this policy to use all diligence and care in maintaining the efficiency of said locking device and in locking the automobile when leaving same unattended."

On September 3d, 1921, Mr. Billet left the car parked in front of 75 Mulberry street, in the city of Newark, while he made some purchases of meats. The key of the tilt lock device had been broken for two weeks. The car was, consequently, unlocked, except on ignition, which offers no barrier to an expert thief. Upon Mr. Billet's return to the place where he had parked the car it had been stolen. Mrs. Billet then instituted a suit in the Essex County Court of Common Pleas to recover the sum of $2,800 for the loss of the car. The policy was of the form known as a valued policy—that is, the parties had agreed that in the event of loss the car

should be deemed to be of the value for which it was insured, namely, $2,800. At the trial of the case in the Court of Common Pleas the trial judge submitted to the jury as a question of fact for their determination whether or not the assured had used all diligence and care in maintaining the efficiency of said locking device, and in locking the automobile when leaving the same unattended. The trial judge had previously refused to direct a verdict for the defendant upon the theory that the question of whether, upon the evidence submitted, all diligence had or had not been used, was a question of law for the determination of the trial court. The trial judge in his charge also stated to the jury that if they rendered a verdict for the plaintiff it should be for the sum of $2,800. This was giving to the provision of the policy respecting the value of the car in case of loss the effect of an agreement between the parties, fixing as liquidated damages the sum of $2,800.

The result of the trial in the Essex County Court of Common Pleas was a verdict for the plaintiff in the sum of $2,129. The jury evidently found that the plaintiff had used all diligence in maintaining the efficiency of the locking device and in locking the automobile when leaving it unattended. The jury apparently ignored the charge of the court on the question of damages. From the judgment entered in the Court of Common Pleas upon the verdict rendered the insurance company appealed to the Supreme Court. The grounds of appeal, briefly stated, were that the trial court erred—first, in submitting to the jury the question of the plaintiff's diligence with respect to the maintenance of the efficiency of the locking device, and in locking the car when leaving the same unattended; and, second, in excluding testimony regarding the value of the insured car at the time of the theft, involving in this aspect of the case the direction of the trial judge to the jury to assess the plaintiff's damages at $2,800, if they found for the plaintiff. The Supreme Court held that the trial judge ruled correctly in holding the question of diligence to be one of fact for the determination of the jury, and that the trial judge had ruled incorrectly in

treating the policy as a valued policy. The Supreme Court reversed the judgment and directed that a new trial be had, limited to the question of damages. From the order of reversal the insurance company has appealed to this court. The principal ground assigned for reversal is the refusal of the Common Pleas Court to direct a verdict for the defendant, bringing before this court the question of whether under the evidence it was proper to leave to the jury the question of the exercise of diligence by the plaintiff in maintaining the efficiency of the locking device. Mrs. Billet has filed a cross-appeal bringing up the question of the correctness of the Supreme Court's decision in limiting her damages to the actual value of her car at the time of theft, and the further question of the propriety of the trial court's ruling that the locking device rider was a part of her policy of insurance.

The appeal of the insurance company will be first considered. This brings up, as stated, the question whether it was error for the trial court to refuse to direct a verdict for the defendant upon the ground that the testimony made the failure of the plaintiff to use "all diligence and care in maintaining the efficiency of said locking device and in locking the automobile when leaving the same unattended" a court question and not a jury question. The facts were undisputed. The key of the locking device had been broken for two weeks before the theft. No attempt had been made to repair it. No effort to obtain a new key had been made. With the tilt lock device out of order the car was taken out and left unlocked and unattended upon a public street in Newark, with the result that it was stolen. This testimony, it seems to us, discloses a violation of the contract of the insured to maintain the efficiency of the locking device. No explanation of the plaintiff's non-action was given. In fact, none could be given. The clause in question required "all diligence" to be used. This placed upon the assured a high degree of care. It required affirmative action on the part of the plaintiff as soon as she, or her husband as her agent, were apprised of the failure of the device to perform its functions. Yet, for

two weeks after being so apprised, neither the plaintiff nor her husband did anything towards remedying the defective condition of the lock. Under these facts we think it was error to leave the question of the plaintiff's diligence to the jury. It was a court question, not a jury question. Where the evidence shows no diligence was used, it seems absurd to leave to a jury for their determination the question whether all diligence was used. The facts being uncontroverted, the issue became one of law for the decision of the court. The trial court should, in our opinion, have directed a verdict for the defendant.

While there appears to be no case in this state relating to the same provision of an insurance policy as the one under consideration, yet the underlying principle has been applied to other provisions of a similar nature in policies of insurance and indemnity. In the case of *Smith* v. *Fidelity and Deposit Company of Maryland, 98 N. J. L. 534,* this court held that the construction of a promissory warranty in a policy of burglary insurance to maintain an armed watchman on the insured premises is a matter of law for the court, and where it appeared from the evidence that no such watchman had been maintained for three weeks prior to the burglary, the trial court had properly directed a verdict for the insurance company. In expressing the opinion of this court, Mr. Justice Black well said that "if the contention of the appellant [the insured] is sound, viz., the absence of the night watchman for three weeks does not nullify the policy, then he could be absent for three months, and so on indefinitely." So, in the present case, if the failure of the assured to do anything to repair the lock for two weeks does not nullify the policy, then the assured could have permitted it to remain out of order for two months, and so indefinitely. To adopt any such construction of the policy would be to ignore the plain terms of a duty agreed to be performed by the assured, and which was a material factor in the protection of the insurer from loss, and likewise a material factor in determining the premium to be charged for the risk undertaken by the insurance company.

In a recent case in the Supreme Court of this state of *Macchia* v. *Scottish Union and National Insurance Co., ante p.* 258, Mr. Justice Parker wrote an opinion which held that where the insured in a policy of fire insurance had covenanted in the event of fire to notify the underwriter forthwith of the occurrence of the fire, that the trial court erred in leaving to the jury the question of the sufficiency of a notice given forty days after the occurrence of the fire. It was not a jury question. A verdict should have been directed for the defendant. The case of *Atlantic City Aerie, No.* 64, v. *International Fidelity Insurance Co.,* 83 *N. J. L.* 583, is also in point. In this case an indemnity bond provided that a committee of the assured lodge should, "at least, once quarterly, make a full and complete examination of the books and accounts of the [bonded] officials, and verify the bank balance, by comparison of the cash on hand with the check book and bank book." An official defaulted and absconded. The evidence showed that a committee had examined all the books and accounts of the official quarterly and found them correct. But the court, in an opinion by Mr. Justice Kalisch, held it was not sufficient to rely on the bank deposit book alone to verify the bank balance; that the words "cash on hand," in view of the policy provisions, meant cash on hand in the bank; that an affirmative duty rested on the committee to go to the bank and ascertain what balance the books of the bank actually showed was on hand, and that the failure of the committee to apply to the bank for this information was a violation of the provisions of the bond, and that it was error for the trial court to have directed a verdict against the defendant.

In other states the same view has been expressed. The case of *Doerr* v. *National Fire Insurance Co.* (*Mo.*), 253 *S. W. Rep.* 39, is a case in point. This case involved a locking device endorsement like the one in the case at bar. The assured, on one occasion, ran the car into his garage, locked the device, but left the key in the lock, and the car was stolen. The trial court ruled that this was a sufficient breach of the locking device endorsement to forfeit the policy, and took this

question out of the hands of the jury. The appellate court sustained this ruling.

The case of *Union Marine Insurance Co.* v. *High (Arkansas)*, 239 *S. W. Rep.* 741, is similar to the present case. In this case the insurance company issued a policy covering an automobile. The policy contained the following recital: "In consideration of the reduction in premium granted under this policy, it is made a condition thereof that the insured will at all times during the life of this policy carry on the automobile insured, in a readily accessible place, at least, one fire extinguisher known as Pyrene * * *, and that the insured will use due diligence to maintain the said fire extinguisher in full and complete working order during the life of this policy." The owner equipped it with an extinguisher. On December 21st he exhausted the contents of the extinguisher in extinguishing a fire on the car. Between January 1st and January 4th, following, the car again caught fire and was destroyed. There was no extinguisher on the car. This circumstance the owner sought to explain by saying he had tried to have the extinguisher recharged at his home, and there was no one there to do the work. He was then told to take the car to Little Rock, but he had no way to get it there. He further testified that the fire was of such a character that it could not have been extinguished even if the extinguisher had been on the car. The trial judge left the question of the plaintiff's diligence to the jury, which returned a verdict in favor of the plaintiff. The insurance company appealed. The Supreme Court held that no case had been made for the jury, and that a verdict should have been directed in favor of the insurance company.

There are other cases to which reference could be made, but those referred to sufficiently support the view we entertain; that under the testimony submitted in the present case it was error to have submitted the question of whether or not all diligence was exercised by the insured in maintaining the efficiency of the locking device and in locking the automobile when leaving it unattended, to the jury for their determina-

tion. This view makes it necessary to reverse the judgment of the Supreme Court affirming in this respect the ruling of the Court of Common Pleas.

The cross-appeal brings up the question as to whether or not the trial court erred in holding that the locking device rider was a part of the policy of insurance. Mrs. Billet claimed that the rider was not received. There was evidence that it was mailed. Mr. Billet testified that he had asked for such a rider with the view of reducing the premium after the installation on the car of the tilt lock. Under these circumstances we think it a proper exercise of the discretion of the trial court to allow the introduction of secondary evidence as to the contents of the rider. While the rider was not physically attached to the policy, it recited that it was attached to and formed a part of the policy. The fact that it was not actually physically attached was a circumstance which could be waived by the insurance company. We see, therefore, no error in the ruling of the Court of Common Pleas that the rider was a part of the policy, as there were no facts controverted which made the question other than one of law for the court.

In view of the views we entertain on the aspect of the case above considered, it is unnecessary to consider the other question raised by the cross-appeal, namely, whether the Supreme Court erred in holding that the policy was not a valued policy, yet we feel that if we passed over this question *sub silentio* our action would be construed as an endorsement of the view held by the Supreme Court upon this question. We, therefore, wish to say that we do not concur in the view expressed by the Supreme Court that the policy in question is not a valued policy. We think it is a valued policy, and, if we believed that the plaintiff was entitled to recover thereon, the damages recoverable by the plaintiff would be the sum of $2,800, the value fixed by the parties to the contract in the event of loss. We endorse the view entertained on this point by the trial court.

The judgment of the Supreme Court is reversed.

WHITE, J. (concurring).

My vote for reversal rests solely upon the portion of the Supreme Court deliverance in this case which refused plaintiff the benefit of the "valued policy" feature of the insurance contract, for which plaintiff paid and defendant accepted an extra premium.

Mr. Justice Kalisch requests me to say that the foregoing statement applies also to his vote for reversal.

*For affirmance*—THE CHANCELLOR, LLOYD, J. 2.

*For reversal*—TRENCHARD, PARKER, KALISCH, KATZENBACH, CAMPBELL, WHITE, VAN BUSKIRK, CLARK, MCGLENNON, KAYS, JJ. 10.