AUTOMOBILE UNDERWRITERS, INC., ET AL. *v.* JEANETTE CAMP, BY NEXT FRIEND, ET AL.

[No. 27,365. Filed May 29, 1940. Rehearing denied June 28, 1940.]

330

*Fenton, Steers, Beasley & Klee,* of Indianapolis; *Padgett & Rogers,* of Washington; and *Ely, Corn & Nixon,* of Petersburg, for appellants.

*Douglas H. McDonald* and *Morton McDonald,* both of Princeton; and *John K. Chappell,* of Petersburg; and *Allen, Hastings & Allen,* of Washington, for appellees.

ROLL, C. J.—This was an action by appellee, Jeanette Camp, by her next friend, Lucian D. Camp, seeking to have funds held by the appellant, Automobile Underwriters, Inc., as Attorney-in-fact for subscribers at the State Automobile Insurance Association, hereinafter called the Insurance Company, applied to the payment of a judgment which she obtained against the appellee, William Summers, for injuries received by her while riding in the automobile of said Summers as a guest. Her claim for the application of said funds is predicated on a policy of insurance issued to William Summers by the said Insurance Company, which policy was made an exhibit to her complaint.

Appellee Summers defaulted and the court found in favor of the plaintiff and ordered the Insurance Company to pay the former judgment out of the funds in its hands.

The decisive question presented by this appeal is whether or not the policy of insurance, issued by the

Insurance Company to William Summers, provided protection to said Summers for injuries to occupants of his automobile. If it did not, then the appellee, Jeanette Camp, is not entitled to have any part of the fund held by the Insurance Company applied to the payment of her judgment, and this cause should be reversed. The "bone of contention" in this case centers around the application for insurance, two petitions to transfer, and a "rider" attached to the policy at the time the policy was delivered to said Summers.

The evidence is undisputed, and the record discloses the following facts:

On October 14, 1932, William Summers made application for insurance on his automobile, which application was introduced in evidence as defendant's exhibit "C". In said application, under the heading "coverage wanted" and "premium deposit", appear the following questions and answers.

| COVERAGE WANTED | ANSWER "Yes" or "No" | PREMIUM DEPOSIT |
|---|---|---|
| 28. Liability and Property Damage | yes | $10.00 |
| 28A. Excess Liability Amount | no | $ ____ |
| 29. Occupancy Coverage | no | $ ____ |
| 30. Additional Names, Num. | none | $ __ |
| 31. Collision (Ded. $ No) | yes | $20.00 |
| 32. Fire | no | $ ____ |
| 33. Theft | no | $ ____ |
| 34. Cyclone | no | $ ____ |
| 35. Total Yearly Premium | | $30.00 |
| 36. Premium for 6 Months | | $15.00 |

On August 31, 1933, and on February 9, 1934, William Summers executed a written request to have said insurance transferred to another automobile. These

written requests were introduced in evidence as defendant's "exhibit E", and "F", and appearing on the face of said exhibits are the following:

| Answer the Following by "Yes" or "No" under Heading | To Be Transferred | To Be Added |
|---|---|---|
| 28. Liability and Property Damage | Yes | |
| 28A. Excess Liability Amount | No | |
| 29. Occupancy Coverage | No | |
| 30. Additional Names, Num | No | |
| 31. Collision (Ded. $No) | Yes | |
| 32. Fire | No | |
| 33. Theft | No | |
| 34. Cyclone | No | |

The applications for transfer were granted, and the transfer was effected, and evidenced by the riders attached to the master sheet of the policy.

The policy is dated October 18, 1932, and was delivered a few days thereafter. At the time the policy here in question was delivered to William Summers, there were three riders pasted to the front page of the master sheet and to about the middle part thereof. The first rider contains a provision relating to financial responsibility, and was signed by the president and secretary of the company. The provisions of this rider have no material value in this case. This second rider is unsigned and it is the instrument around which much of the controversy in this case centers.

At the top of this rider is the following:

" . . . . in consideration of the premium payment this ENDORSEMENT is attached to and forms part of this policy, subject to the limitations, exclusions and warranties contained therein,

PUBLIC LIABILITY AND PROPERTY DAMAGE INSURING COVERAGE."

Following this headline are six paragraphs printed in small type and lettered A, B, C, D, E, and F. Each paragraph covers about one inch of space, and together, they circumscribed the liability of the company as to public liability. This rider will be referred to herein as defendant's exhibit "A".

The third rider contains eight paragraphs and has to do with property damage to the owner's car. This rider is unsigned, and contains a provision that it is attached to and forms a part of the policy. This rider will be referred to as defendant's exhibit "B".

Paragraph G of the master sheet provides:

"G. No condition or provision of this contract shall be modified, changed, amended, altered or waived except by a written endorsement attached hereto and executed by the Automobile Underwriters, Inc., Attorney-In-Fact for the State Automobile Insurance Association."

It is appellee's contention that defendant's exhibits "A" and "B" are no part of the contract, and were properly excluded as evidence. They seek to maintain their position on two theories; (1) because paragraph G. of the master sheets provides that alterations, written endorsements, etc., must be *signed* by the company, and defendant's exhibits "A" and "B" were not executed according to provision G; (2) appellee made the policy, minus these exhibits, a part of her complaint by attaching it thereto as an exhibit, and the defendant did not deny the execution thereof under oath. They therefore argue that, because the defendant did not answer by a plea of non est factum, it is precluded from denying the execution of the policy as pleaded, and, consequently, there was no error in the admission

of the policy, minus the two riders, defendant's exhibits "A" and "B", in evidence.

We will first consider the question whether or not the two riders, defendant's exhibits "A" and "B" constituted a part of the contract.

Couch, on Insurance, Vol. 1, § 159, states the general rule as follows:

> "As a general rule, a rider or slip attached to a policy or certificate of insurance is, prima facie at least, a part of the contract to the same extent, and with like effect, as if actually embodied therein, provided, of course, that it does not violate any statutory inhibition, and has been lawfully, and sufficiently attached, or attached and referred to therein, since riders or slips, in order to be considered as a part of the contract, must be made a part of the policy, either appearing in the body of the instrument, or by attachment, or proper reference thereto in the policy."

American Jurisprudence, Vol. 12, § 245, says:

> "Thus, a memorandum on a written contract qualifying or restraining its operation may be regarded as a part of it. Similarly, a memorandum on a bill or note indorsed thereon contemporaneously with the execution of the instrument forms a part of the contract and binds the parties to the same extent as if it had been embodied in the instrument. An endorsement upon an instrument before its execution may be treated as an explanation in writing of the intent of the parties, although to have this effect it must be shown affirmatively to have been upon the instrument when executed."

Corpus Juris Secundum, Vol. 17, § 299, p. 716, states the general rule in similar terms. The case of *Davern* v. *American M. L. Ins. Co.* (1925), 241 N. Y. 318, involved the question of whether or not a rider, physically attached to the policy, became a part thereof. The court in discussing this question says:

> "The parts of the rider which we have quoted above show, we think, that the rider was intended merely

to enlarge the scope of the insurance or indemnity provided by the policy. It was part of the same contract, subject to the same conditions, based upon the same application. Liability under the rider depends upon the validity of the contract of which it is a part."

In *Billet* v. *Penn. Fire Ins. Co.*, 101 N. J. L. 546, 553, 129 Atl. 209, 211, 212, the question was whether or not a rider, not physically attached to the policy became a part thereof and the court said:

"While the rider was not physically attached to the policy, it recited that it was attached to and formed a part of the policy. The fact that it was not actually physically attached was a circumstance which could be waived by the insurance company. We see, therefore, no error in the ruling of the Court of Common Pleas that the rider was a part of the policy, as there were no facts controverted which made the question other than one of law for a court."

In the case of *Legare* v. *West Coast L. Ins. Co.*, 118 Cal. App. 663, the court had under consideration the identical question here presented and the court said:

"The policy proper is of course signed. That is all that the law requires. No requirement has been called to our attention that every rider attached to a policy must, likewise, be signed. It is not a question of a modification of the policy after its issuance. This sheet, as we have seen, was part and parcel of the policy when it was issued."

The Supreme Court of Michigan, in the case of *Johnston Bros. Inc.* v. *Village of Coopersville* (1932), 261 Mich. 26, adheres to the same rule. In ■ *Curran* v. *National Life Ins. Co., Inc.* (1916), 251 Penn. State 420, it was held that endorsements, unsigned by the company but attached thereto, became a part of the policy. The same question was considered in the following cases with similar results:

*Murdock* v. *The Chenango Co., Mutual Ins. Co.* (1849), 2 N. Y. 210; *Timlin* v. *Equitable Life Ins. Society* (1909), 141 Wis. 276; *Brunelle* v. *Ruell* (1905), 140 Mich. 256; *Shoe Co.* v. *Insurance Co.* (1894), 8 Texas Civil Appeal 227; (see also *Forman* v. *Mutual Life Ins. Co.* (1917), 173 Ky. 547, where many cases are reviewed and cited). To the above list might be added many other cases, but we do not think it necessary. The evidence is undisputed in this case that the two riders here in question, were pasted to the face of the policy, contemporaneous with its execution, and were so attached when the policy was delivered to the insured. The riders themselves provided that the endorsement is attached to and forms a part of this policy. We think that there is no serious question but that said riders, being defendant's exhibits "A" and "B" were intended to be a part of the policy by the parties thereto, and the same, did in fact, become a part thereto, and should be so considered by the court. The policy itself was signed by the company, and the signing of the policy was a signing of all the riders properly attached thereto at the time. We think that paragraph "G" above referred to applies, only to changes made after the policy was delivered. We think this conclusion is inescapable from the authorities which seem to be in accord upon this proposition. Appellee has cited no cases in conflict with this rule of law, and we have been unable to find any.

We will consider next appellee's second proposition, namely, that the court did not err in excluding appellant's exhibits "A" and "B", and did not err in permitting appellee to introduce the policy, minus defendant's exhibits "A" and "B", because the execution of the policy as pleaded, was not denied under oath.

We do not think appellee's position can be main-tained for two reasons.  First, in proceedings supple-mental to execution, no answers are con-templated.  § 2-4404, Burns' 1933, § 678, Bald-win's 1934, Acts 1881 (Spec. Sess.), Ch. 38, § 599, p. 240 provides:

" . . . and all proceedings under this act, after the order has been made requiring parties to appear and answer, shall be summary, without further pleadings, upon the oral examination and testimony of parties and witnesses."

Under this section of the statute, it has been held all pleadings subsequent to the complaint or affidavit have been dispersed with.  *Wallace* v. *Lawyer* (1883), 91 Ind. 128; *Carbin* v. *Goddard* (1884), 94 Ind. 419; *Burkett* v. *Bowen* (1889), 118 Ind. 379, 21 N. E. 38; *Beckman Supply Co.* v. *Newell* (1918), 68 Ind. App. 679, 118 N. E. 962.  The record discloses that defendants herein, offered to file two paragraphs of affirmative answer, but the court rejected them.  We think the court acted rightly upon authority of the above cases.  Evidently the trial court considered the proceeding herein as proceedings supplemental to execution.  A realing of the complaint shows clearly that appellee so considered it.

Second:  Even if it be conceded that the proceedings herein were not proceedings supplemental to execution, appellant should have been permitted to intro-duce the exhibits "A" and "B" in evidence to prove that the contract alleged was not the con-tract entered into between the parties, and that the real contract was another and different one.

"In an action on contract, the defendant may show, under the general denial, that the contract between the parties was a different one from that set forth in the complaint, or that the contract alleged in the complaint is invalid, or that the agreement was void, and that, in fact, no contract

at all was made." Watson's Revision of Works, Practice, and Forms. Vol. 1, § 569, p. 419, 420.

We are of the opinion that a plea of non est factum has no application to a situation such as is presented in this case.

It may also be noted that at no time in the trial court did the appellee urge that defendant's exhibits "A" and "B" were not admissible because it had failed to deny the execution of the contract as pleaded by appellee under oath, or because it failed to file an answer of non est factum. Not having based her objection upon that ground, she is in no position, on appeal, to urge an objection not made in the trial court. It appears that the only objections made by appellee to the introduction of defendant's exhibits "A" and "B" was because it did not appear that either of the endorsements referred to, had been executed by the Automobile Underwriters, Inc., Attorney-in-fact for the State Automobile Insurance Co. Association, but on the contrary it appears that the same has not been executed and are therefore not a part of the policy in controversy. *Malott* v. *Central Trust Co.* (1907), 168 Ind. 428, 79 N. E. 369; *Avery* v. *Nordyke and Marmon Co.* (1905), 34 Ind. App. 541, 70 N. E. 888; *Pittsburgh etc. R. Co.* v. *Martin* (1901), 157 Ind. 216; *Stout* v. *Rayl* (1896), 146 Ind. 379, 45 N. E. 515.

Since we have concluded that the riders, designated as defendant's exhibits "A" and "B", became a part of the policy and were binding upon the insured and upon the Insurance Company from the time the policy was delivered, we will proceed now to consider the effect of the provisions contained therein.

The policy provides that the application for insurance, filed by Wm. Summers, became a part of the

policy. Also the requests for transfer by the provisions therein contained also became a part of the policy. As noted in the first part of the opinion, the original application for insurance stated that no "occupancy coverage" was wanted and no premium was charged for such coverage. The insured, Wm. Summers, on two different occasions, filed a request for a transfer of the insurance. The first request was filed on August 31, 1933, and the second was filed on February 9, 1934. In both of these applications for transfer the question was asked whether or not he desired "occupancy coverage", to which question he answered, no.

Paragraph "F" of exhibit "A", circumscribed the liability of the Insurance Company with reference to public liability and property damage, and reads as follows:

> "F. This contract does not cover any liability or obligation imposed upon the Subscriber and/or other assured by reason of any Workman's Compensation Law now in effect or enacted during the contract period, nor any property that is rented or leased by the Subscriber and/or other assured or his employees or agents, or property carried in or upon the automobile described herein, nor any claims for injuries to the occupants of the insured automobile, unless provided for by special endorsement attached hereto."

It will be noted that the last provision of this paragraph very clearly and definitely exempts the Insurance Company from any claim for injuries to the occupants of the insured's automobile unless provided for by special endorsement attached thereto. No such endorsement was attached to the policy. Appellee, in her brief, says that the policy does not assume to define "Occupancy Coverage" and she also points out that the application and request for transfer all contained a request for liability and property damage. She also points out

that William Summers, in his application, applied for "Liability Insurance." She also points out that the policy, under clause 10, of "Section of Warranties", immediately above the signature of the Insurance Company, contains the following:

> " 'This policy is issued for Coverages as follows: *Liability—Property Damage*' 'Yes.' . . .
>
> "The annual premium under this contract (exclusive of Application fees) for the first year, is as follows:
>
> 'Liability—Property Damage, Collision
> Annual Premium $30.00.'
>
> "On the *back of the policy,* appears a printed summary of the coverage afforded, in which the following occurs, printed *in bold, black type:*
> 'For your information
>
> . . . . .
>
> 'Public Liability (Injuries to persons)
> *Maximum Liability* $10,000.00
> 'For actual amounts of insurance refer to schedule of Warranties.' "

Appellee also points out that by § 39-302, Burns' 1933, § 9845, Baldwin's 1934, the term "Liability Insurance" has a well defined meaning and means:

> "All Insurance except compensation Insurance against loss or damage from accident to or injuries suffered by an employee or other person for which the insured is liable."

From the language of the statute, appellee claims that the above language of the statute embraces injuries to an occupant of an insured car. In other words, it's appellee's contention that the above quoted parts of the policy create an ambiguity, and, under such circumstances, the court should adopt the construction most favorable to the insured. Many cases are cited by appellee to the well understood rule of law that where ambiguous language is found in a

contract and it becomes necessary to determine the meaning of the ambiguous language, the court will construe the language used, most strongly against the party drafting the instrument. But we see no occassion for invoking rules of construction for the reason that we find no ambiguity involved. Clause 10 of the heading "Schedule of Warranties", is perfectly understandable. If it could be said that the words "Liability Insurance" is unlimited in its scope, as contended by appellee, by the same reason it could be contended that liability would be unlimited in amount, but both the amount and kind of public liability insured against is limited clearly by the provision contained in the policy. We think the term "Occupancy Coverage", as used in the original application and again in the transfer, when taken with the last sentence of paragraph "F" in defendant's exhibit "A" is perfectly clear and understandable, and therefore is not subject to the rules of interpretation of ambiguous contracts.

Courts are not at liberty to make contracts for individuals. They have a right to make such contracts as in their judgment are proper. It may be unfortunate in this case that Mr. Summers did not carry insurance that would protect occupants of his automobile, but that fact does not change the terms of the policy. For the errors mentioned, the cause is reversed with instruction to sustain appellant's motion for a new trial.

NOTE.—Reported in 27 N. E. (2d) 370, 128 A. L. R. 1024.

## On Petition for Rehearing.

ROLL, C. J.—Appellee, in her application for a rehearing, waives all questions presented in her original brief except one, and, as to that question, appellee very earnestly insists that this court had overlooked some

of its former decisions which she contends are almost identical from a factual standpoint with the case at bar. The proposition is thusly stated by appellee.

" . . . with the two 'riders', defendant's Exhibits 'A' and 'B' considered as a part of the policy, there is such ambiguity in the policy, *considered as a whole,* as requires the court to apply the rule it has so often announced and followed, that when the language of an insurance policy is capable of two constructions, that construction must be adopted which is most favorable to the insured, that which affords indemnity rather than that which denies it."

In support of her contention that the policy is ambiguous, she points out that clause "A" of the "rider", designated as defendant's Exhibit "A" purports to afford protection to appellee because, by this clause the appellant agrees:

" . . . to pay any loss by reason of liability imposed by law upon the subscriber . . . for damages, on account of bodily injuries including death resulting therefrom, accidently inflicted upon any person or persons as the result of, accident occurring . . . while this policy is in force . . . caused by the use or operation of the automobile described herein . . . "

In her brief on rehearing she says:

"This clause is certainly broad enough to include the appellee Camp since she is clearly a 'person' and her injuries were the result of use and operation of the automobile covered by the policy."

She further states:

"The court must surely attach some importance to the fact that no where in clause 'A' of the 'rider' (defendant's exhibit 'A') is there any language either directly stating, or even susceptible of an inference, that the coverage thereby afforded is limited by language found elsewhere."

· She also points to the provisions of condition "J" of the so called "master-sheet". Clause "J" is a general insuring clause. We quote the following from page 7 of appellee's brief.

> "*The unequivocal statement in two different places in the policy that it indemnifies insured 'against liability imposed by law for damages on account of PERSONAL INJURY TO OTHERS' forbids a limitation entirely cutting off such indemnity for injury to an 'occupant' of insured's car, 'hidden away in small type in another part of the policy,' with nothing whatever to call such limitation to the attention of the insured."*

Upon this point she leans heavily upon the case of *Hessler* v. *Federal Casualty Company* (1921), 190 Ind. 68, 129 N. E. 325, and argues that the provisions above pointed out bring this case clearly within the law as announced in that case. A reading of the Hessler case reveals the distinction in the two cases. In the Hessler Case the action was upon a policy of accidental insurance for the sum of $500.00. On the back of the policy, in bold letters, it was stated that,

> " . . . it also covered all bodily injuries caused by accidental means, such as . . . gun shot wounds . . . injuries inflicted by robbers or highwaymen . . . at home, in the office, store, shop," etc.

There was also the provision in the policy that the insurance was subject to all the conditions and limitations therein contained and endorsed thereon. Printed in small print there were three clauses. Each contained conditions or limtiations. In clause "M" it was provided that if:

> " . . . death, disability or loss, was due wholly or in part to, or resulting directly, or indirectly from, *injuries intentionally inflicted upon the assured by himself or by any other person,* . . . the

.limit of the company's liability shall be twenty per cent of the amount which would otherwise be payable under this policy."

The admitted facts in that case were that the assured was shot while he was working in the store, by a person who entered the store for the purpose of robbery. It will be noted that the part referred to above as being on the back of the policy, was in fact a part of the body of the policy itself, but the policy was so folded that the quoted part formed one side of the back.

The following excerpt from the last page of the opinion clearly states the court's views on this question:

> "There is hardly room for doubt that, when the policy with the quoted statement printed on the back of it was presented to the insured in soliciting his application for insurance and collecting the initial premium, he would understand that he was insured for $500 against death inflicted by a gun in the hands of a robber who might invade his working place, and that the appellee company printed those words below the application on the back of the policy with the intention that the insured should so understand his contract. The construction thus suggested to induce the execution of the contract and the payment of premiums must be adhered to in settling for a loss covered by the policy."

A different situation presents itself in the case at bar.

We must keep in mind that, in determining whether there is ambiguity in the policy here in question, appellee Camp is in the same position as the insured Summers, and that she can take no position different from the position Summers could take had he paid the judgment and instituted this action against appellant on his policy. So, we must consider whether the insured Summers was in any position to

say that the protection afforded by the terms of the policy extended to occupants of his car. When considered with this fact in mind, it seems to us the mere statement of the proposition answers itself. It will be remembered that in his (appellee Summers) application for insurance, he was asked the question whether he wanted "occupancy coverage"; to which question he answered, no. On two different occasions in his application for a transfer of his insurance to another automobile he stated on both occasions that "occupancy coverage" was not wanted. How could it be said in view of the above facts that there was ambiguity in the language of the policy, when the policy contained a provision, excluding liability for injury to occupants of the Summers' car in compliance with his own request. Could Mr. Summers be heard to say that there was an ambiguity in the language used, and that the court should so construe the general insuring clause so as to include injuries to occupants, when he, by his own written request, not once, not twice, but three times requested that the policy should contain a provision which would exclude liability for injuries to occupants of his car? He, in substance, said to the appellants herein, I make application for liability insurance, but do not desire protection for injuries suffered by occupants of my car. This risk I will assume myself. He received exactly what he requested. There is not the slightest hint, that the policy was not what he contracted for and just what he paid for, or that Mr. Summers did not fully understand all the terms of the policy.

By the terms of the policy the application was made a part thereof. It cannot be said upon the record in this case that Mr. Summers applied for insurance to protect him from injuries resulting to occupants of his

car. It is undisputed that he expressly requested that such protection be not included. The policy issued and accepted by Summers accomplished just that thing. Clause "F" of "rider" "A," marked defendant's "Exhibit A," accomplished the expressed desires of Mr. Summers. He received just what he requested and paid for.

The contract clearly expressed the intention of the contracting parties, and Mr. Summers is making no contention to the contrary. Contracts are made to express the intention of the parties. When contracts are so written as to express the undisputed intention of the parties, courts are without power to change them, even upon application of a third party. The other case relied upon by appellee is *Masonic Acc. Ins. Co.* v. *Jackson* (1928), 200 Ind. 472, 164 N. E. 628. We are unable to see how this case could be construed as lending any support to appellee's position in this case. It reiterates the well-settled rule as to construction of an ambiguous clause in an insurance policy. We have no intention to modify the rule by this opinion.

We have read appellee's brief on rehearing carefully, and while we were convinced of our position as expressed in the original opinion, we were induced by the earnestness of counsel for appellee in his brief to re-examine the question and further express our views upon the subject. Upon reconsideration of the question we find no occasion to change or modify what we have heretofore said.

Rehearing denied.

NOTE.—Reported in 28 N. E. (2d) 68, 128 A. L. R. 1024.