Harrison-Wilson Company, a partnership composed of J. E. Harrison, C. D. Wilson, and Forest S. Pearson, all licensed real estate dealers, sued appellant for broker's commission on real estate in Austin, Texas, listed with them for sale by appellant. Trial was to a jury but at the close of the evidence both appellant and appellees filed motions for an instructed verdict. That of appellant was overruled; that of appellees granted, and judgment rendered on such instructed verdict in favor of plaintiffs against defendant for $400 and all costs; hence this appeal.
The following facts appear: The property involved was appellant's homestead in Austin, Texas. He and his wife were temporarily residing in Arlington, Virginia, where he was working in the shipyards. Appellees had been renting and looking after his property as his agents. On April 4, 1944, he wrote appellees as follows:
"Considering my operating expenses, insurance, taxes, interest, etc., my rental on our Austin home is not justifying it as a business proposition. Will you therefore, if you are interested, advise what you consider you might likely be able to realize in a sale on the property. I would of course like to sell the house complete with the furniture. * * *"
To this appellees replied on April 7, 1944:
"Since receiving your letter of April 4, with reference to the sale of your property, we will be very happy to assist you in disposing of this property and would appreciate your giving us the price you would be willing to accept including all the furniture.
"In setting a price be sure to include the customary charge necessary in the transfer of the property such as bringing the abstract to date, paying all taxes to date of transfer, revenue stamp, other papers that may be necessary and our commission of 5%."
And in response to this request appellant wrote appellees on April 28, 1944:
"As to the sale of the house and the two apartments of furniture, venetian blinds, etc., which we have there. I am asking $6200.00 for my part. Therefore, I take it that you would have to advertise it for say $6530 in order to realize your five per cent. In reply herewith, please let me know if you would have in mind to run a small cut of the house in connection with your advertising it, when and if you do advertise. If not, then I plan to do this sometime this early summer just prior to going to Austin as I think it will be a small ad well spent This however, would not in any way interfere with your customary procedure in regard to any sale that you have occasion to make."
On May 6, 1944, appellees wrote appellant that they were offering this property for sale at $6600 so as to net him $6200; and on May 9, 1944, they signed as his agent a written contract of sale with Salem Joseph for $6600, payable $4000 cash, and a note for $2600, bearing 6% interest, payable in monthly installments of $35 each. On the same day they wired appellant that they had sold his property in accordance with appellant's letter of April 28, and would forward deed for his signature. Appellant declined to make conveyance, and thereafter this suit was filed. Upon the foregoing evidence, and the oral testimony of C. D. Wilson, the trial court rendered its judgment.
Appellant's first contention is appellees did not find a purchaser ready, able and willing to purchase the property at the price appellant offered to sell it because the appellant in his letter of April 28 "did not say whether he wanted all cash, or wanted to sell on terms, nor did he name any terms, nor did he say anything about paying plaintiffs anything or any amount over and above the $6200 for which the property might be sold as their commission * * *"
This contention is clearly not tenable. If the list price for sale had been cash only and the broker had produced a purchaser only for part cash and part credit, then he would not have complied with the owner's terms of sale. But if it be conceded, in the instant case, that appellant contemplated and intended a cash consideration, it is not controverted that the broker himself was willing to accept the $2600 note and pay appellant the entire amount of the consideration in cash. And even if that were a condition of sale, it was clearly thereafter waived by appellant in a letter written by him to appellees on May 23, 1944, stating, among other things:
"Naturally, since you were not successful in renegotiating, or effecting a satisfactory cancellation, the terms of my letter of the 28th, stipulating a consideration of sixty two hundred for my part or a total of sixty six hundred as listed price, constitutes the basis of our agreement. *Page 502 
"As to terms, I want a good first or second trust note, ranging from two to four thousand dollars, with interest at six or eight per cent respectively."
This letter was not only a reaffirmation of the original listing but indicated a willingness to accept terms within which the offer to purchase came, as evidenced by the contract. It is not controverted that the proposed purchaser was ready, able and willing to carry out his contract.
It is next urged that the trial court erred in granting appellees' motion for an instructed verdict because it did not, as required by Rule 268, Texas Rules of Civil Procedure, "state the specific grounds therefor," citing particularly Wright v. Carey, Tex. Civ. App.169 S.W.2d 749; and Steed v. State, Tex. Civ. App. 180 S.W.2d 446. In both of those cases the motion was overruled. If it be conceded that the motion in question was defective in this regard and that the trial court could have overruled it on that ground; if, as we think the record shows, the appellees, under the evidence, were entitled to a judgment in their favor as a matter of law, and such judgment was the only one the court could properly have rendered, the error was obviously harmless.
It is next contended that the court erred in taxing costs incurred in the attachment proceeding against the appellant, since it was shown that the property in question was admittedly the homestead of appellant and the attachment levied thereon by appellees was quashed upon motion of appellant. Appellees confess that the trial court erred in this regard. In his motion for rehearing appellant complained of this, called it to the trial court's attention, and sought to have such costs taxed against appellees. The trial court, however, overruled his motion and taxed all costs against appellant. This was clearly error in so far as the costs incurred in the attachment proceeding were concerned.
It is further contended that it was error to admit in evidence the contract of purchase because it was not signed by appellant nor accepted by him, but only by the purchaser and appellees as agent. This contention is not sustained. This is not a suit to enforce that contract nor for damages for breach of it. When appellant in writing authorized appellees as his agent to sell said property on the terms listed, in view of the requirements of Sec. 22 of Art. 6573a, Vernon's Ann.Civ.St., that to entitle a broker to a commission an agreement to purchase must be in writing, there was clearly an implied, if not express, authority of the agent to execute such a binding contract. Obviously such written contract was the best evidence on the controlling issue in this case, — whether the broker had produced a purchaser for the property within the terms of the listing. It is not controverted that the proposed purchaser was ready, able and willing to perform it. To hold that the broker's right to a commission depended upon the signature by the owner of a purchase contract, would enable the owner to defeat that right by a refusal to sign it. The authority granted in writing by the owner to the broker to sell property on the terms specified, clearly carries with it the authority of the broker to execute on his behalf a contract necessary to the exercise by the broker of the authority granted.
Nor is the action here in violation of the provisions of Sec. 22, Art. 6573a, Vernon's Ann.Civ.St. The agreement in writing contemplated in that statute was evidenced here by the written authority given by appellant to appellees to sell the property so as to net the owner $6200; the services of the appellees in accordance therewith; and the written agreement of Salem Joseph to purchase said property on terms which would net appellant the $6200, exclusive of commissions. It was not necessary that all of these essentials be embodied in a single written contract. 10 Tex.Jur., § 27, p. 49; 20 Tex.Jur., § 100, p. 308, and cases cited. The essential elements of appellees' cause of action were thus established without resort to parol evidence, thus complying with the provisions of the real estate dealers act.
The only other contention which we deem it necessary to discuss is that the court erred in excluding as evidence three letters written by appellant to appellees from Arlington, Virginia, dated May 9, May 11, and May 26, 1944. There was no error in this. Without detailing the contents of these letters they clearly show that information received by appellant from parties in Austin, subsequent to his letter of April 28, agreeing to sell for $6200 net, had led appellant to believe he could sell his property for a higher price. None of the letters undertook to revoke the offer of $6200 made on April 28; but even if they *Page 503 
had, an offer cannot be revoked after it has seen accepted. While revocation of an offer may be made at any time up to time of acceptance, such revocation must be communicated to the one to whom the offer is made; and if sent by mail is not effective until actually received by the offeree. Since, in the instant case, the offer of April 28 was accepted on May 9 by written contract, and appellant notified by telegram of that date of such acceptance, the contract became effective as of that date; and letters written subsequent thereto would not be admissible to modify it, contradict its terms, or show a different intent from that stated without ambiguity in the original offer. See 17 C.J.S., Contracts, § 52, p. 401.
The judgment of the trial court, except that portion taxing against appellant the costs incurred in connection with wrongfully suing out the writ of attachment, is affirmed; and the costs in the trial court of the writ of attachment and the costs of this appeal are taxed against appellees.
Affirmed in part and in part reversed and rendered.