**MARLIN ASSOCIATES v. TRINITY UNIVERSAL INS. CO.**

No. 14139.

Court of Civil Appeals of Texas. Dallas.
Dec. 16, 1949.

Rehearing Denied Jan. 13, 1950.

Smithdeal & Lefkowitz and Shook & Shook, all of Dallas, for appellant.

Allen Wight, of Dallas, for appellee.

YOUNG, Justice.

Appellant's suit was upon an inland transit policy of insurance covering a motor truck shipment of electric fans, the attached rider form reciting "from Dallas, Texas to Little Rock, Arkansas." At close of evidence both parties moved for instructed verdict. These motions being considered and that of defendant granted, the case was withdrawn from the jury and judgment rendered that plaintiff take nothing.

Incidents leading up to the present controversy will be briefly sketched: In June, 1947 appellant, Marlin Associates, became interested in securing a better market for a quantity of electric fans, deciding on Birmingham, Alabama, as point of distribution. Cheneler Manufacturing Company, maker of the fans, was having similar trouble in marketing, the two concerns agreeing to a method of disposition, viz.: They would load fans that each desired to sell on a truck and trailer, which, together with driver Lyons, were furnished by Cheneler, appellant sending along an employee (Smith) with bill of sale; the shipment going to Birmingham where the latter would attempt a sale of the merchandise singly or in quantity. At about the same time Morris Margolin, president of appellant corporation, called in a Mr. Ed Harvey, with whom was carried much of its insurance, and requested him to secure a policy insuring the fans of Marlin Associates against all hazards of the particular trip; Margolin stating that he told Harvey "what would go in" the policy later received from appellee Trinity Universal. The trip was begun June 11, Margolin testifying that he first heard from employee Smith at Texarkana, next getting word from detectives at Mobile, Alabama, he thought, reporting loss of the fans; whereupon he ordered Smith to return home. (Smith testified by deposition at the trial to effect that on night of June 17 while stopping at a Montgomery, Alabama tourist camp, driver Lyons had made off with the

truck, trailer, and all property aboard—some 315 fans; and that warrant had been sworn out charging Lyons with theft of over $5,000.) Eighty-nine of these fans were recovered in damaged condition and disposed of as salvage for $250 or. $300.

Basic form of the policy in suit (Inland Transit No. 192562) began with the following provisions, both printed and type-written: "Amount $6000.00 Rate 75¢ Premium $45.00. In Consideration of the Stipulations herein named and of Forty-five and no/100 Dollars Premium Does Insure Marlin Associates Whose Address is 2401 Main Street, Dallas, Texas For the Term of time from the 12th day of June 1947 at 12:01 A.M. Standard Time at place of issuance until property reaches destination against direct loss or damage as hereinafter provided, to an amount not exceeding Six Thousand and no/100 Dollars to the following described property while located as described herein and not elsewhere." Then followed trip transit form No. 69 reading in part (printed matter in parentheses): "$6000.00 (on shipment of) Fans (Shipped via Railroad, Express, Motor Truck or Vessel) Motor Truck (from) Dallas, Texas (to) Little Rock, Arkansas but not to exceed $100 on any one fan (Name of Express Company or Truckman) own drivers on leased truck (* * *)." This rider was unsigned but stated at close that it was attached to and formed a part of above numbered basic policy. A second and signed rider No. 801 reads in part: "For and in consideration of the premium for which this policy is written, it is hereby understood and agreed this policy is extended to cover the hazard of theft of an entire shipping package, excluding all pilferage." Closing part of the instrument recited: "This policy is made and accepted subject to the foregoing stipulations and condition and to the conditions printed of the back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto. * * *"

Issuance of the foregoing policy was consequent upon the following facts according to testimony adduced by plaintiff: Some time in June '48, according to A. T. Hamilton, solicitor for Larry Higgins Agency, he had a telephone conversation with Ed Harvey, acting on behalf of Marlin Associates, the latter asking "me if any of our companies could or would insure a stock or cargo of fans being shipped from Dallas, Texas, to Little Rock, Arkansas." This witness (Hamilton) stated that during the conversation he made notes thereof on a scratch pad, preserving the memorandum and reading same in course of his answers, viz.:

"A. Under the first caption is 'Marlin Associates' then 'lot warranty from Dallas to Little Rock, amount $6,000, fans, 1942 Chevrolet tractor, Nabors Trailer, closed body, two drivers and one representative, Marlin.' If you want everything that is on there, I also have '$50 deductible and Trinity 6-12.'

"Q. That 6–12 is June 12th, you think? A. I believe so.

"Q. So was all of that made at the time, or part of it while you were talking to him, and part of it later? A. Part of it. Everything but 'Trinity, 6–12' was made when I completed my conversation with Mr. Boettcher and put down on my paper the company that he told me was going to write the insurance."

He further testified:

"Q. You didn't put down anything except 'Little Rock' as to the destination? A. That is right.

"Q. Did you put that down as you talked, or when you got through? A. As I talked with Mr. Harvey.

"Q. Mr. Harvey said it was the origin and termination of the trip? A. Mr. Harvey, to my recollection, said Dallas to Little Rock, Arkansas."

In the same connection Ernest Boettcher, an authorized agent of appellee company, stated: "* * * Mr. A. T. Hamilton of the Texas Hardware Mutual Insurance Agency, or the Larry Higgins Agency, called me and asked me if I could handle an inland marine policy for him. I asked him the particulars, and the merchandise that was to be handled was electric fans in

the amount of $6,000; they were to be carried on a leased truck, and a representative of Marlin Associates, in whose name the insurance was to be written, was to go along with the truck and the merchandise. The destination was Little Rock, Arkansas. It was also understood there might be some sales made, or deliveries made between— at some of these points (between) here and Little Rock." Premium rate on policy ordered was agreed on, policy issued and delivered to Hamilton who mailed it to Harvey for appellant. A report of loss (coincident with receipt of policy) was made by Harvey to Hamilton. The Ed Harvey hereinabove referred to did not testify.

Appellant's points (eleven in all) generally raise questions of reformation of policy or of its construction, and present in substance (1) the court's error in grant of defendant's motion for instructed verdict because such motion did not state the specific grounds therefor," (Rule 268); (2) refusal to submit certain requested issues to the jury; (3) urging particularly that the evidence was sufficient to justify issue of mutual mistake with respect to place of destination of plaintiff's truck load of fans as Little Rock, Arkansas, instead of Birmingham, Alabama; (4) error in refusal to grant plaintiff's motion for instructed verdict on grounds: (a) in not holding that the unsigned trip transit rider should be disregarded as in conflict with stipulation of basic policy insuring the goods "until property reaches destination"; or, (b) in not construing the policy most favorably to assured with resulting plaintiff's judgment, the question of actual destination being unimportant since the subject matter in each event was the same interstate haul, and risk, hazard, and premium were shown under the undisputed facts to be no greater with destination Birmingham rather than Little Rock.

■ Where there is no evidence warranting submission to the jury, it is the court's duty to withdraw the case from their consideration and dispose of it as a matter of law regardless of tender of motion for instructed verdict; for which reason any irregularity in form of the motion tendered, or even a failure to reduce it to

writing, becomes immaterial. Peacock v. Harrison, Tex.Civ.App., 189 S.W.2d 500; Harvey v. Elder, Tex.Civ.App., 191 S.W. 2d 686, writ ref. Of course, an entirely different question would have been presented upon overruling of appellee's motion and assertion of error predicated upon its refusal without having stated specific grounds therefor as required by the cited Rule.

■ We pass to appellant's contention on the merits. As this record stands, it appears without dispute that the policy subject matter was insurance of an overland truck haul of merchandise from Dallas to Little Rock according to advices from Harvey for appellant to Hamilton of the Higgins Agency, and thence channeled to Boettcher as agent for appellee; and as to how and when "destination Little Rock" became misinformation, and Birmingham the true destination, is wholly unexplained. Obviously plaintiff has made no case for equitable reformation of a writing which reflects the exact wording of this preliminary conversation between the parties; 24 Tex.Jur., Reformation, sec. 54, p. 744. "Reformation is a proper remedy when the parties have reached a definite and explicit agreement, understood in the same sense by both, but, by their mutual or common mistake, the written contract fails to express this agreement." Black on Rescission and Cancellation (1916), sec. 11.

■ Nor is appellant in any better position in the matter of construction. It is argued that unsigned rider No. 69 should be ignored and liability fixed under provision of basic form of policy insuring until property reaches destination, the shipment never having reached Little Rock. Manifestly, without aforesaid rider, the policy is seen to be utterly meaningless, providing, as it does, against "loss * * * as hereinafter provided," for coverage only upon "the following described property," limiting the coverage to property "while located as described herein and not elsewhere"; then wholly failing to set forth any property or its location except by reference to the mentioned rider. Also the following well settled principles refute the contention made: "As a general rule, a rider, slip, or other paper becomes a part of a contract of

insurance if properly and sufficiently attached or referred to therein, or if made a part of the body of the instrument; * * Accordingly, effect will be given to the provisions of a policy to which a rider is attached where the rider is inserted in and made a part of the entire policy for the purpose of adapting its provisions to the particular kind of property, especially with reference to the method and condition of its operation, where there is nothing uncertain or restrictive in its terms, and it contains the provision, 'attached to and made a part of this policy,' and where there is, at the end of the entire policy, a stipulation that it is 'made and accepted under the foregoing stipulations and conditions, together with such other provisions, agreements, and conditions as may be indorsed hereto.' Furthermore, the rule that a rider or slip may constitute a part of the contract is especially applicable where without such a rider or slip the contract would be incomplete." 29 Am.Jur., sec. 175, p. 194. And unsigned riders attached to policy at time of delivery to insured "become part of policy, notwithstanding provision in policy that indorsements must be signed by insurer, since such provision applied only to alterations and written indorsements after delivery of policy to insured, and signing of policy was a signing of all riders properly attached to policy at time of signing." Automobile Underwriters v. Camp, 217 Ind. 328, 27 N.E.2d 370, 28 N.E.2d 68, 128 A.L. R. 1024.

There is evidence on part of Boettcher, the agent (but whether binding on appellee we need not consider), that he would just as readily have worded the policy with Birmingham as destination at same rate and coverage, had he known that such was the true point of transit. Even so, an essential element of contract is mutual assent of the parties; and there having been no meeting of the minds on any inland transit policy with destination Birmingham, defendant insurance company may justifiably decline to have such a contract imposed upon it. "A court is not at liberty to revise an agreement while professing to construe it. Nor does it have the right to make a contract for the parties—that is, a contract

different from that actually entered into by them. Neither abstract justice nor the rule of liberal construction justifies the creation of a contract for the parties which they did not make themselves or the imposition upon one party to a contract of an obligation not assumed." 12 Am.Jur. sec. 228, pp. 749, 750.

The judgment under review is in all respects affirmed.