Stout *v.* Rayl *et al.*

---

## STOUT *v.* RAYL ET AL.

[No. 18,087.   Filed December 4, 1896.]

DEEDS.—*Validity Of.—Delivery to Third Person for Benefit of Grantee.*—Where, after the execution of a deed, the grantor handed the deed to his wife saying, "take it and keep it in a safe place until my death, then deliver it to B. F. Wells," endorsed on the deed were the words "after my death this deed to be delivered by B. F. Wells," and the wife kept the deed as directed, and at the death of grantor delivered same to B. F. Wells, who, after having it recorded, delivered it to grantee, such deed is not invalid as an attempt by grantor to make a testamentary disposition of the land without the legal formalities of a will.

Stout *v.* Rayl *et al.*

SAME.—*Delivery.*—Where a grantor executes a deed, reserving no right to recall the deed or alter its provisions, and delivers it to a third person to hold until his death and then deliver same to grantee, the delivery thereof as directed constitutes an effectual legal delivery, and on the death of grantor the grantee succeeds to the title.

APPEAL AND ERROR.—*Evidence.*—Objections to the admission of evidence not stated at the time it is objected to cannot be urged on appeal.

From the Hamilton Circuit Court. *Affirmed.*

*J. F. Neal* and *S. D. Stuart,* for appellant.

*Christian & Christian* and *Jesse E. Hodgin,* for appellees.

McCABE, J.—The errors assigned on this appeal call in question the conclusions of law stated on the special finding of facts by the circuit court, and the action of that court in overruling the plaintiff's motion for a new trial. The substance of the special finding is as follows:

1st. That Robert Stout died intestate on June 18, 1895, leaving surviving him as his only heirs at law the defendant, Jemima Stout, his widow, Lucius Stout, Mary Ann Allen and Andrew P. Stout, his children.

2d. That on the 22d day of October, 1881, Robert Stout, by warranty deed, his wife, Jemima, joining therein, conveyed to the defendant, Mary Rayl, certain described real estate, situate in Hamilton county, Indiana, containing sixty acres. Said deed was duly acknowledged on said day before a justice of the peace; that thereafter, on said day, said deed was handed to the defendant, Jemima Stout, by said Robert Stout, he saying to her, "take it and keep it in a safe place until my death, then deliver it to B. F. Wells;" that said Jemima Stout took said deed and put it in a drawer, which was a safe place, and kept possession of it there under lock and key until the death of said

Robert Stout, whereupon she delivered said deed to said B. F. Wells; that said deed on the day of its execution was put into an envelope by said Robert Stout and sealed up, and there were indorsed on said envelope the words: "Deeds to be delivered by B. F. Wells after my death," and there were indorsed on said deed the words: "After my death this deed to be delivered by B. F. Wells;" that said B. F. Wells, pursuant to the instructions given him by Robert Stout in his life time, called for and received said deed after the death of said Robert Stout, from the defendant, Jemima Stout, and caused the same to be recorded in the deed records of the county; and after said deed had been so recorded he delivered it to the defendant, Mary Rayl, who accepted the same and went into possession of said real estate.

3d.   That on February 9, 1884, said Robert Stout, by warranty deed, his wife, Jemima Stout, joining therein, conveyed to the defendant, Mary Rayl, certain other described real estate, situate in the county of Hamilton, and State of Indiana, containing twenty acres, more or less; that said deed was duly acknowledged before a justice; that on said day after said deed had been duly signed and acknowledged, said Robert Stout handed said deed to the said defendant, Jemima Stout, saying to her: "Take it and keep it in a safe place until after my death, then deliver it to B. F. Wells;" that said Jemima Stout took said deed and put it in a drawer, which was a safe place, and kept possession of it there under lock and key until the death of said Robert Stout; that thereupon she delivered said deed to B. F. Wells; that said deed on the day of its execution was put into an envelope and sealed up, and there was endorsed on said envelope this language: "Deeds to be delivered by B. F. Wells after my death;" and there was endorsed on said deed

this language: "To be delivered by B. F. Wells," and that said B. F. Wells, pursuant to the instructions given him by Robert Stout in his life time, called for and received said deed after the death of said Robert Stout, from the defendant, Jemima Stout, and had the same recorded in the deed records of the county, and thereafter delivered it to said defendant, Mary Rayl, who accepted the same and went into possession of said real estate.

4th.   That said Robert Stout, deceased, at no time after the execution of either of said deeds and placing them in the hands of said Jemima Stout, ever exercised any control or authority over them, or ever called for them.

5th.   That said Robert Stout, during his life time, exercised full control over said real estate and received the rents and profits therefrom and paid the taxes thereon, and that his personal property left by him is sufficient to pay his debts.

5½.   That at the time of signing each of said deeds before said justice, said Robert Stout directed his wife to take charge of them and not let his body get cold in death before delivering them to B. F. Wells; that she accordingly took sole charge of said deeds and put them under lock and key in a drawer where she and said Robert kept their private papers.   While he had access to said drawer by obtaining the key from her, he never had or resumed control of said deeds, or the other deeds to his children, but left them in the possession of his said wife.   Frequently, prior to his death, and after making said deeds, he had conversations with said B. F. Wells, in which he directed him to deliver the deeds after his death to the grantees, and said Wells did so deliver them, but he never saw or had possession of them until they were delivered to him by Mrs. Stout.

6th. That said defendant, Mary Rayl, since the death of said Robert Stout, has had possession of said real estate, and paid the taxes thereon and received the rents and profits therefrom of the value of $——.

7th. That at the same time said first deed was signed and acknowledged by said Robert Stout and Jemima Stout, his wife, to Mary Rayl, said Robert and wife conveyed to plaintiff, Andrew P. Stout, a certain tract of real estate, situate in said county and State, and also conveyed to each of the defendants by separate deeds, a certain tract of real estate, situate in said county and State, each of which said deeds was placed in the envelope in which said first deed to Mary Rayl, herein mentioned, was placed, and each of said deeds was handed to said defendant, Jemima Stout, by said Robert Stout, saying to her: "Take it and keep it in a safe place until my death, and then deliver it to B. F. Wells;" that said Jemima Stout took each of said deeds and put them in a drawer, which was a safe place, and kept possession of each of them there under lock and key until the death of said Robert; that on the death of said Robert Stout she delivered each of said deeds to said B. F. Wells; that there was indorsed on each of said deeds this language: "To be delivered by B. F. Wells," and there was indorsed upon said envelope this language: "Deeds to be delivered by B. F. Wells;" that said B. F. Wells, after the death of Robert Stout, called for and received each of said deeds from the defendant, Jemima Stout, and had each of them recorded in the deed records in Hamilton county, and afterwards delivered them respectively to Andrew P. Stout, Jemima Stout and L. R. Stout, each of whom accepted the deed so delivered and took possession of the real estate described therein, and are now, and ever since have been in possession thereof; that said Mary Rayl had lived in said

Stout's family twenty-eight years prior to his death, and he adopted the plan of dividing his real estate by deed, as above found, instead of by will or otherwise, which plan was, after his death, ratified, adopted and acted upon by his heirs as well as said Mary. The conclusion of law was that: Upon the foregoing facts the court concludes the law to be with the defendants, and that the plaintiff take nothing by his complaint and pay the costs, to each of which conclusions of law the plaintiff excepted.

The complaint sought to set aside said deeds to Mary Rayl, and to quiet plaintiff's alleged title in and to the undivided one-third of two-thirds of said real estate, as one of the children and heirs of Robert Stout, deceased.

It is contended that the conclusion of law stated by the circuit court is wrong because, as is claimed, first, that the facts found show that there never was a legal delivery of the deeds, and second, that the transaction was an attempt on the part of the grantor to make a testamentary disposition of his propery by deed, and without the legal formalities of a will.

The cases of *Stewart* v. *Weed*, 11 Ind. 92, and *Squires* v. *Summers*, 85 Ind. 252, are very similar in their facts to the case at bar, and the conclusion there reached fully supports the conclusion of law stated in the present case. In the latter case it was said, on pages 253-4: "The deed was executed and duly acknowledged by Richard [Summers], Sr., and Paulina, his wife, in the presence of Thomas Sutton, the justice who took the acknowledgment, and Aaron Summers, husband of the grantee, Mary Summers; the other grantees were Richard Summers, Jr., and Thomas Summers. After the deed was signed and acknowledged, the justice handed it to Richard Summers, Sr., who handed it to Aaron Summers, the hus-

band of one of the grantees, saying, 'Take it and give it to some one to keep while I live, then to be recorded.' Aaron took the deed, saying to Richard, Sr., 'I will give it to Paulina.' Richard, Sr., then said to her, 'Take it and put it away in the drawer, and take care of it until I die; then it is to be recorded.' * * After the execution of the deed Richard, Sr., expressed dissatisfaction with the deed, and asked Paulina where it was; when told that it was in the drawer, he said that 'they had forfeited it; that it had never been delivered, and that, if it had been, the other children could have it set aside; and that, as soon as he got able, he would go to town, and have a deed made to suit him.' This he said in the presence and hearing of Thomas Summers, one of the grantees. Upon these facts, there was no error in the conclusion of the court that the title to the land therein conveyed was vested in the grantees. * * * When a deed is delivered to a third person for the use of the grantee, the deed will take effect from the instant of such delivery, if the grantor parts with all control over the instrument. *Stewart* v. *Weed*, 11 Ind. 92." To the same effect is *Wilson* v. *Carrico*, 140 Ind. 533; *Dinwiddie* v. *Smith*, 141 Ind. 318; *Smiley* v. *Smiley*, 114 Ind. 258.

Mr. Washburn, in his work on real property (5th ed.), Vol. 3, at pages 319, 320, states the law thus: "Whether putting a deed into a third person's hands is a present delivery, or an *escrow*, depends upon the *intent* of the parties. If the delivery depends upon the performance of a *condition*, it is an *escrow;* otherwise it is a *present grant*, though it be to wait the lapse of time, or happening of an event. If it is to be delivered at the grantor's death, it is a present deed; and a quit-claim by the grantee, intermediate, would pass his estate."

An eminent author correctly and clearly states the law thus: "Where a grantor executes a deed and delivers it to a third person to hold until the death of the grantor, the latter parting with all dominion over it and reserving no right to recall the deed or alter its provisions, it seems to be settled by the weight of authority that the delivery is effectual, and the grantee on the death of the grantor succeeds to the title. A delivery of this kind may be considered in effect an *escrow*, but differs from that in the fact that a delivery in *escrow* is dependent upon the performance of some event, and not upon the lapse of time." Devlin on Deeds, Vol. 1, section 280.

It is equally clear that the transaction did not constitute an attempt to make a testamentary disposition of the land by the grantor in the deeds in question. *Owen* v. *Williams*, 114 Ind. 179.

Objection is urged to the admission of the testimony of Jemima Stout as to the directions given by her husband as to what she should do with the deeds. The objection now urged to that testimony is, that it does not appear therefrom that these directions were given at the time the deeds were deposited with her. But no such objection was stated at the time the admission of the testimony was objected to. It has often been decided by this court that objections to the admission of evidence not stated at the time it is objected to can not be urged here on appeal.

The objection that such testimony was not part of the *res gestae* was made, but the court, in admitting the evidence, expressly stated that it was admitted as a part of the act of delivery. If these directions were in fact given at a different time than that of the delivery of the deeds, and thereby rendered incompetent, it was in the power of appellant to have so shown by a proper question to the witness; and then

he might have moved to strike out the testimony. He fails to make the error alleged appear by the record, and hence he cannot secure a reversal therefor. Errors which the complaining party fails to make appear affirmatively by the record are not errors so far as such record is concerned.

There is no foundation for appellant's claim that the special finding is not supported by the evidence.

The circuit court did not err in its conclusions of law and in overruling appellant's motion for a new trial.

The judgment is affirmed.