MACHLAN v. STATE OF INDIANA.

[No. 31,014. Filed May 1, 1967.]

*Stevens, Wampler, Travis & Feagler,* of Plymouth, for appellant.

*John J. Dillon,* Attorney General, and *Michael* v. *Gooch,* Deputy Attorney General, for appellee.

MOTE, J.—Appellant, eighteen (18) years of age, was charged by affidavit and found guilty by a jury "with carrying one Frontier Model Derringer pistol and one Browning Automatic .25 caliber revolver in a vehicle, to-wit: a 1961 Chevrolet Corvair, without having a license to carry such weapons."

A pre-sentence investigation by the Probation Officer was ordered and made and hearing was held thereon. On April 28, 1966, the court pronounced judgment on the verdict and sentenced Appellant to the Indiana State Farm for a period of one (1) year and that he pay the costs of the action.

The trial court overruled and denied a motion for a new trial, which resuled in this appeal. Appellant assigns several errors for our consideration, but he relies almost exclusively upon his constitutional protection against unreasonable search and seizure provided as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." *Article I, Section 11, Constitution of Indiana; Fourth Amendment to the Constitution of the United States.* (The provisions in both Constitutions read the same.)

Through the proceedings in the trial court, by motion to suppress evidence—hearing and adverse ruling thereon, motions for a directed verdict at the close of the State's evidence and at the close of all of the evidence, which motions were overruled, and by objections to the admission of evidence, the Appellant has preserved the error which is the bedrock of this appeal. It seems incument upon us, in order to clarify the conclusion we have reached as a matter of law, to set forth herein a brief resume of the significant evidence as it appears in the record.

At approximately 3:00 o'clock P.M. on March 1, 1966, Appellant was operating an automobile which was involved in an intersection collision with another motor vehicle in the City of Plymouth, as a result of which there were personal injuries to the parties involved and particularly to Appellant, as well as property damage to each of said vehicles.

Officer Forest McKee of the Plymouth Police Department who investigated the collision, called two automobile repair shops to come for the vehicles so that they right be removed from the streets. Bordner's Body Shop, perhaps with indicated approval of the Appellant, removed his vehicle, which was damaged so extensively that part of it had to be placed on a dolly, to its place of business and stored it on its salvage yard. Appellant was removed to Parkview Hospital in said City. Officer McKee testified in substance:

"He was at the scene (of the collision) 5 minutes or a little longer. Then I went to the hospital emergency room. I saw the defendant there. Mr. Machlan was on the emergency table. I told him I was going—he was arrested. I was going to issue a traffic ticket * * * I went in a connecting room and at a desk and there is where I made out the ticket. I then told defendant he could come to the police station after he was released to sign the ticket."

Mr. Wilbur Bordner, who removed the vehicle Appellant had been operating, testified that in order to protect them, it was necessary to remove personal belongings from the vehicle and that while he was doing so, Officer Watson of the Plymouth Police Department came upon the scene. It appears that said Officer inquired if he, Bordner, had found any guns and upon receiving a negative reply, Officer Watson began directing Bordner in the search for guns. One was found in a case on the floor below the driver's seat and another gun between the seats under the carpet. It is evident that neither gun was visible as a gun to one who was an onlooker. These guns were confiscated by the Officer and later offered and admitted into the evidence at the trial, over the objection of the Appellant.

Although it appears there was ample time to procure a search warrant under the existing facts shown by the record, upon a showing of probable cause, none was obtained prior to Officer Watson's search of the vehicle in question, through the medium of a third person (Mr. Bordner) without the

authority of Appellant. If Mr. Bordner were a bailee, which Appellant's counsel disclaims, the bailment was so limited that the bailee could not have authorized the search made under the circumstances above related.

The State contends, however, that there was no search and practically has conceded that if a search were made, a warrant therefor would have been necessary. Thus the question resolves itself into whether there was a search. The State urges that Officer Watson "merely observed the salvage yard owner find the guns. Where there is no search, there can be no problem of unreasonable search and seizure." The record does not support the State's contention in the latter regard. The undisputed evidence discloses for a certainty that Officer Watson gave directions for the search, as a result of which the guns in question were found, confiscated and later admitted into the evidence over the objections of the Appellant.

While it may be speculated that Officer Watson may have been able to stand by and possibly could have observed Mr. Bordner remove the two guns from the vehicle, in the ordinary course of cleaning out and storing the same along with other personal property, this is not what occurred. Instead, the Officer took charge and gave instructions to Mr. Bordner, thus placing himself in the position of a principle making the search through the agency of Mr. Bordner.

In its brief, the State maintains that "there was no 'search' within the legal concept of unreasonable search and seizure." This conception is not supported by the authorities which it cites, but on the other hand, as we view such authorities, they actually support Appellant's contentions.

*McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671, cited by the State, involved two occasions. On the first, it was held that there was no search at all "illegal or otherwise, or, if there was, the appellant was prejudiced in any way." On the second occasion, the search without a warrant definitely was consented to by appellant, who "* * * told them to go

ahead and search; that they would not find anything." *McAdams* v. *State, supra,* also states that:

"There may be a legal search without a warrant. A man may waive his constitutional right against search and seizure by consenting thereto, and if he does so knowingly and freely and without coercion he cannot object to the use of evidence obtained by such search." (Citations)

Inasmuch as Appellant in the case at bar gave no consent to search McAdams v. State, supra, does not apply to the State's contention.

*McCoy* v. *State* (1960), 241 Ind. 104, 170 N. E. 2d 43, also cited by the State, involved the receiving of stolen goods by the mother of an 11-year old son, Max Allsup, and another boy 9 years of age, who had broken into a F. W. Woolworth store and stolen certain merchandise and thereafter took it to the said mother's home, where she secreted it knowing that it was stolen property. When the said son was asked by police officers investigating the break-in at the Woolworth store "to get the merchandise out of his home and appellant's home (the mother and son lived on the same premises) and give it to them," the young son complied with the request. This Court stated:

"It appears first that there was no actual search of the home and that one of the occupants voluntarily turned over the exhibits to the police. In the law of searches and seizures, the term 'search' implies a prying into hidden places for that which is concealed." McAdams v. State, supra, is here cited.

Continuing with *McCoy* v. *State, supra,* this Court stated:

"Even if there had been a search, appellant cannot complain of a violation of a constitutional right of another person in connection with search and seizure. The constitutional right to be secure against unreasonable searches and seizures is a right *personal* to the individual claiming it." (Citations)

Thus again this Court announced the age-old doctrine that under the Constitutions, one has the right to be secure against unreasonable searches and seizures and that it is a right to the individual claiming it, which, in our opinion, supports the contentions of the Appellant.

As we view this appeal, no factual situation comparable to *McCoy* v. *State, supra,* exists and in no manner can Mr. Bordner's situation be compared with Max Allsup, who participated in the theft and resided in the home with his mother, who was being charged under Burns' § 10-3017, 1956 Repl., as knowingly having received the stolen merchandise and not as an accessory to the theft. Mr. Bordner was not authorized for and on behalf of the Appellant to consent to or permit the search, nor was Officer Watson authorized to "pry into hidden places for that which was concealed" or to direct the search which was carried on, during which the confiscated guns were discovered in the vehicle.

In consideration of the testimony of Officer Watson, it seems apparent that he was directed, as he came on duty at 4:00 o'clock P.M., by the Chief of Police, William A. Nixon, to "check out" the vehicle which Appellant had been operating and "we both understood that he wanted me to go out and check for guns." It seems equally apparent that Officer Watson, through the agency of Mr. Bordner, in fact and in law conducted a search without first having obtained a warrant for search after a showing of probable cause. At this time, Appellant was in the hospital and there is no evidence that he authorized anyone to search said vehicle.

We recognize the rule laid down in *Pettit* v. *State* (1935), 207 Ind. 478, 188 N. E. 784, and cited with approval in *Idol* v. *State* (1954), 233 Ind. 307, 119 N. E. 2d 428, as follows in the latter citation:

> "The reasonableness of searches of motor vehicles depends largely upon the facts and circumstances of each par-

ticular case. This is necessarily so because of the ease and rapidity with which motor vehicles may be moved from place to place, and the consequent impossibility of procuring warrants in all cases in time to search such vehicles."

In *Pettit* v. *State, supra,* this Court stated and held:

"Our Constitution recognizes and protects the right of the people to be secure 'in their persons, houses, papers and effects against unreasonable search or seizure.' (Art. I, § 11, Ind. Const.) The arrest of a person is not a violation of this constitutional guaranty against unreasonable seizure if the officers making the arrest, at the time, have reason to believe, i.e. probable cause for believing, that the person to be arrested is committing or has committed a felony, for which the arrest is made. In applying the constitutional provision, an automobile has been treated as falling within the classification of an 'effect' which shall be 'secure against unreasonable search or seizure.' Robinson v. State (1925), 197 Ind. 144, 149 N. E. 891, 892.[1] In determining the question of the reasonableness of a search or seizure a different test has been applied in reviewing the search, according to whether a dwelling house or an automobile was searched. Except when made to effect, or as incidental to, a lawful arrest, a search of a private dwelling without a warrant, though upon probable cause, has been held to be unreasonable. But a search of an automobile, if made upon probable cause, may not be unreasonable though made without a warrant, and it is not essential that such search shall have been made to effect, or as incidental to, a lawful arrest.[2] This rule usually has been applied to cases involving a search made under circumstances which, connected with the facts constituting probable cause, might tend to render the search impossible or impracticable if delayed until a proper warrant is secured.[3]" (For Nos. 1, 2 and 3, see notes and citations at bottom of page 785, Vol. 188 N. E.)

While the State contends that "no search was made" in the case on appeal, as stated above, we are constrained to classify and hold that there was a search and under the evidence, the said search was based not upon probable cause, but upon a suspicion that Appellant possibly might have a gun which he

was known to have purchased and the mere speculation that there was a second gun in the vehicle.

The record herein discloses that Officer McKee, who attended the scene of the collision and directed the tow-in of Appellant's automobile, thereafter went to the hospital where he saw Appellant being administered to for the injuries sustained in the collision and that he had a conversation about an arrest. We are not persuaded to conclude that an arrest was made then, since the Officer went into another room and made out a "ticket" which was not given to Appellant, but later after the "search" it was given to him at the Police Headquarters where he signed it, retaining a copy thereof. This was some time between 4:30 and 5:00 o'clock P.M. on the date in question—one and one-half to two hours after the collision when Appellant, at the request of Officer McKee, came to the Police Headquarters after his release from the hospital.

Appellant has presented other errors for our consideration, some of which may have merit, but in view of our decision herein, we find it unnecessary to dwell upon them and thereby lengthen this opinion.

It is our opinion that the facts herein applied to the law requires us to hold that there was an unlawful search and seizure without a warrant, which reasonably could have been obtained upon establishment of probable cause, which may have been difficult, according to the record before us; that the evidence obtained was unlawfully obtained; that such evidence should have been suppressed on the hearing of Appellant's motion to suppress; and that the motions for a directed verdict at the close of the State's evidence or at the conclusion of all evidence should have been sustained.

The judgment is hereby reversed and remanded to the lower court for such further action as may be deemed appropriate.

Myers and Jackson, JJ., concur.

Arterburn, C. J., dissents.

Hunter, J., not participating.

NOTE.—Reported in 225 N. E. 2d 762.