GUTHRIE *v.* STATE OF INDIANA.

[No. 869S176. Filed July 22, 1970. No petition for rehearing filed.]

*Whiteleather & Whiteleather,* of Columbia City, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant in this case was charged by affidavit with statutory rape of a four year old girl. Upon a second trial by jury, the jury in the first trial being unable to deter-

mine his guilt or innocence, appellant was convicted and sentenced to life imprisonment at the Indiana State Prison. The sole assignment of error on this appeal is the overruling of appellant's motion for new trial. In his motion for new trial, appellant alleges that errors of law occurred during the trial in the following particulars: (1) the court erred in overruling appellant's objection to the admission of certain evidence claimed to have resulted from an unlawful search of his residence; (2) the court erred in overruling appellant's objection to the admission of state's exhibit number six which was a capsule containing two slides preserving alleged vaginal smears of the rape victim in that the state failed to establish a complete chain of custody in regard to said capsule.

We turn first to the question of whether the search of appellant's residence was unlawful under Fourth Amendment protections. The search complained of was conducted by one Betty Guthrie, grandmother of the victim and sister-in-law of the appellant. Although appellant concedes that searches by private persons have been held not to fall within the ambit of Fourth Amendment protections, *Burdeau* v. *McDowell* (1921), 256 U. S. 465, 65 L. Ed. 1048; *Barnes* v. *United States* (5th Cir. 1967), 373 F. 2d 306; *United States v. Small* (D. C. Mass. 1969), 297 F. Supp. 582; *United States* v. *Masterson* (D. C. N. Y. 1966) 251 F. Supp. 937, *cert. denied*, 385 U. S. 833, it is his contention that Mrs. Guthrie acted upon the advice and direction of the prosecuting attorney. Appellant relies principally on the case of *Machlan* v. *State* (1967), 248 Ind. 218, 225 N. E. 2d 762 for the proposition that the proscriptions of the Fourth Amendment are applicable where the person conducting the search does so upon the advice and direction of a police officer. We would agree that appellant has correctly stated the holding of the *Machlan* case. However, it is readily apparent from the tenor of the objections made at trial that the appellant is here urging on appeal an objection of a different nature than that entered before the trial court.

The background facts are as follows: Mrs. Leas, mother of the victim, upon learning that her daughter had been molested, called the police. After the police left, Mrs. Guthrie, the victim's grandmother called the prosecutor apparently to determine what would be done about the incident. The prosecutor informed Mrs. Guthrie that an arrest warrant could not be issued without more proof since the only information available at the time was mere hearsay. Soon thereafter, Mrs. Guthrie called the prosecutor a second time. Although the full content of that conversation was not disclosed at trial, it appears that at one point the prosecutor asked if there were any witnesses, whereupon Mrs. Guthrie replied that she would get one.

After this conversation, Mrs. Guthrie proceeded to walk over to visit a neighbor of appellant and inquire as to the activities of appellant during that afternoon. After this interview, Mrs. Guthrie again called the prosecutor. There is no indication as to the contents of this third discussion between the prosecutor and Mrs. Guthrie. Immediately thereafter, Mrs. Guthrie went to appellant's residence, a trailer, and conducted the "search" here complained of consisting solely of observations made upon her entry. She only remained a few minutes when it "dawned" on her that it would probably be inspected by the police later. To gain entrance to the trailer, Mrs. Guthrie had used a key in her possession; it appears from the record that her husband owned the trailer in which appellant resided.

The prosecutor, on direct examination of Mrs. Guthrie was attempting to elicit her observations of the interior condition of the trailer. Defense counsel objected on two occasions to the introduction of this testimony as follows:

"Q. When you went to the trailer what, if anything, did you see—anything unusual? About the trailer or . . .

A. Yes, it was all closed up . . .

MR. WHITELEATHER: Your Honor, at this time I will object to anything this witness has to say regarding the

inside of that trailer as being a reasonable search of the trailer which is not owned by her and which she had no right to be in the trailer at that time.

A. My husband owned it—didn't I have any right?

MR. THRAPP: Your Honor, I think that wouldn't be unreasonable seizure to a person other than a police officer.

THE COURT: That's true. I thought the question was, 'Did you notice anything about the trailer as to whether it was closed up.' I thought that was the question.

MR. THRAPP: I asked her if she noticed anything unusual about the trailer at the time.

THE COURT: You didn't say anything about it being closed up?

A. I said that.

THE COURT: Oh, you said that. I will overrule the objection. Go ahead, answer the question.

A. It was all closed up, and that's unusual because even in the winter-time he is warm blooded.

Q. You mean the windows were closed?

A. Yes, Sir.

Q. Was that shut up tight? Now what kind of a day was that, was that a cold day?

A. No.

Q. Was it hot?

A. Yes.

Q. That was the first thing you noticed that was unusual. Was there anything else that you noticed? At the trailer or inside the trailer?

A. Well, it was a mess. The rugs were all torn up and . . .

MR. WHITELEATHER: Excuse me, but may I make the objection at this time that any evidence or testimony by this witness as to the condition of the inside of the trailer amounts to testimony by a person who was not authorized in the trailer and constitutes an unlawful search of the trailer regarding the condition of whatever was found inside the trailer.

THE COURT: Overrule the objection. You may answer."

Upon the overruling of defense counsel's second objection in this regard, Mrs. Guthrie proceeded to describe the appearance of the trailer's interior.

It is clear from the above quoted objections entered by defense counsel that he was challenging the validity of the search on the ground that Mrs. Guthrie had no right to be in the trailer at the time she made her observations. On appeal, however, as above pointed out appellant seeks to raise an entirely new question as to the validity of the search, to wit: was Mrs. Guthrie acting at the instance and direction of the prosecuting attorney?

The general rule was stated by Wigmore in his treatise on evidence to be as follows:

> *"Specific Objection.* A specific objection *overruled* will be effective to the extent of grounds specified, and no further. An objection *overruled,* therefore, naming a ground which is untenable, cannot be availed of because there was *another and tenable ground which might have been named* but was not: . . ." 1 Wigmore on Evidence § 18 at 339-40 (1940).

The courts in this state have applied the rule on numerous occasions. See e.g. *Automobile Underwriters* v. *Camp* (1940), 217 Ind. 328, 27 N. E. 2d 370; *Michigan City* v. *Werner* (1916), 186 Ind. 149, 114 N. E. 636; *Stout* v. *Rayl* (1896), 146 Ind. 379, 45 N. E. 515. Although we do not pass lightly on the question of appellant's constitutional right, neither are we ready to expand the scope of review in this court to include anything which appellant chooses to argue on appeal. The grounds of appellant's objection at trial being of a different nature than here urged on appeal, we need not pass on the validity of the argument now presented.

We turn next to appellant's second assignment of error namely that the court erred in overruling appellant's objection to the admission of state's exhibit number six which was a capsule containing two slides preserving vaginal smears of the rape victim on the ground that a link in the chain of custody was missing.

It is further argued that lacking such a proper foundation and identification of the slides, they were not shown to be

relevant to the issues of the case. The crux of the issue before us, therefore, is the propriety of the trial court's admitting the exhibit since if a proper foundation be laid there can be no doubt but what the slides directly bear on the question of whether the alleged victim was in fact raped. Consequently, we shall deal only with the admissability of the slides into evidence, their relevancy being assumed if properly admitted.

The facts pertaining to the capsule are substantially as follows. The victim, Penny Sue Leas, was taken immediately after the incident to one Dr. Greenlee for treatment. During the course of his treatment, Dr. Greenlee took two vaginal smears which he gave to trooper Les Allegood of the Indiana State Police at about 6:30 P.M. Trooper Allegood delivered the capsule containing the slides to the Command Post at approximately midnight. The police officer in charge at the Command Post, one Sergeant McKowan, was asleep at the time the evidence was delivered. When he got up the next morning at about 8:00 A.M. he found the capsule on the Post Commander's desk and took it to the lab. From the time Sergeant McKowan delivered the capsule to the lab, the state was able and did account for its whereabouts up through and including analysis. Appellant, however, contends that the state's failure to positively account for the capsule's whereabouts from midnight until 8:00 A.M. the next morning raises a serious doubt as to its identity.

Recently this court, in the case of *Graham* v. *State* (1970), 253 Ind. 525, 255 N. E. 2d 652, was required to pass on the introduction of certain evidence where the state had failed to establish a complete "chain of custody." That case involved a conviction for the possession and sale of heroin. The evidence there showed that the narcotic had been recovered from a person who had just bought the heroin from the defendant. At the time it was contained in a chewing gum wrapper. The evidence in that case further showed that the chewing gum wrapper and its contents had been removed from the police

property room prior to its analysis for a period of six days and was in the possession of at least two different policemen during that time period yet neither policeman was put on the stand to explain the whereabouts of the evidence. The rule there announced was as follows:

". . . *where as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics.* Where such evidence or testimony is improperly introduced and is prejudicial to the party against whom it is directed, then the judgment of the trial court should be reversed." 255 N. E. 2d at 656.

Appellant in the instant case makes much of the fact that Sergeant McKowan was unable to say with exact certainty whether the slides were on the Post Commander's desk the entire time from midnight until 8:00 A.M. the next morning. It should be noted that the record clearly shows that Trooper Allegood delivered the slides to the Command Post at midnight. Further, although the recollection of Officer McKowan was somewhat less than certain as to what he did with the slides the next morning, one Donald Moody testified that they were on his desk in the lab when he arrived at work at 8:00 A.M.

The precise question, therefore, is whether the state's inability to produce evidence of the capsule's exact whereabouts from midnight to 8:00 A.M. is fatal to its admissibility. To decide this question we must decide the extent to which the state must go in negating the possibilities that the evidence was tampered with. Here the state showed that the evidence was delivered to the State Police Command Post and that it was still there in the morning. Need the evidence be excluded merely because there is a possibility, regardless of how remote

that possibility is, that the evidence may have been tampered with?

Although the *Graham* case did not specifically deal with that question, it is important to note the differences between the two cases. First of all, the evidence involved in that case, heroin, was similar in form to other substances such as baking powder, sugar or powdered milk. The ease with which one might tamper with such evidence is obvious. Further, the testimony in that case clearly established that the evidence was in the hands of two different individuals for a period of six days under somewhat questionable circumstances, yet neither person was put on the stand by the state to explain or verify their possession. Finally, the evidence sought to be introduced, namely heroin, represented proof of an element essential to conviction on the charge of possession and sale of narcotics. Needless to say, extreme care is required in such a situation to insure that the composition of the evidence is not altered.

We point to these factors, not for the purpose of establishing that such considerations are determinative when passing on the question of a break in the chain of custody, but for the proposition that in certain cases the burden on the state to negate the possibilities of tampering may be greater than in others. The question was simplified in the *Graham* case because there was a clear break in the chain for a six day period. However, where as here, the state has introduced evidence which strongly suggests the exact whereabouts of the evidence, the issue becomes one of probabilities.

Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only. See *People* v. *Riser* (1956), 47 Cal. 2d 566, 305 P. 2d 1; *Breeding* v. *State* (1959), 220 Md. 193, 151 A. 2d 743; *State* v. *Baines*

(Mo. 1965), 394 S. W. 2d 312; *Commonwealth* v. *White* (1967), 353 Mass. 409, 232 N. E. 2d 335. We believe such a rule is well grounded in logic and reason.

The facts in the case of *State* v. *Smith* (Mo. 1920), 222 S. W. 455, are particularly illustrative of the point here sought to be made. In that case the defendant allegedly poisoned some moonshine which was later consumed by the victim at a Fourth of July picnic. After the victim's death, his stomach was removed by a local doctor who placed it in a glass jar and gave it to the prosecuting attorney. The prosecuting attorney left the jar and contents with persons in charge of a local ice plant for approximately two days. The men in charge testified that it remained undisturbed, though it was possible that someone might have seen it while there. Later, the prosecutor picked up the jar from the ice plant and placed it in his car where it remained the rest of the day and overnight, often unattended. The court there noted:

> "The viscera of the deceased in this case were not preserved with that care which should characterize the conduct of an officer in such a case, and the glass jar containing the stomach was carted around in a careless sort of way; but there was no time when anything occurred to suggest a suspicion that the stomach was molested or that anyone who might be interested in tampering with it knew that the prosecuting attorney had the jar in his possession . . . We think the court did not err in admitting the evidence." 222 S. W. at 459.

Likewise in the case at bar. Concededly the police could have exercised a greater degree of care to insure that the capsule was not tampered with. However, there is a complete lack of evidence which suggests the remotest suspicion that anyone did in fact tamper with the evidence. The slides had been left at the State Police Command Post on the Post Commander's desk; they were still there the next morning at eight o'clock. The time period for which custody was unexplained was brief. Further the nature of the evidence here involved, slides of vaginal smears, is not the type that

could easily be tampered with or substituded. Under the facts in this case, we cannot say that the chain of custody was sufficiently broken to render the evidence inadmissible.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn and Givan, JJ., concur; Jackson, J., dissents with opinion in which DeBruler, J., concur.

## DISSENTING OPINION

JACKSON, J.—I am unable to agree with the conclusions reached by the majority opinion and dissent thereto.

Appellant's Motion for New Trial, omitting heading, formal parts and signature reads in pertinent part as follows:

"The Defendant in the above-entitled cause moves the Court for a new trial herein on each of the following grounds:

1. Error of law occurring at the trial as follows:

A. The Court erred in overruling the objection of the Defendant to the admission into evidence of the testimony of Betty Guthrie, during the direct examination of Betty Guthrie, a witness called on behalf of the Plaintiff, and in admitting the answer thereto in evidence, which question, objection, answer, and the ruling of the Court thereon are in the following words:

(1) QUESTION: What did you find in the trailer?

(2) OBJECTION: Defendant objects on the grounds that the entering of the trailer by Betty Guthrie and the results of her search while in said trailer was an unlawful search and, therefore, should not be admitted into evidence.

(3) ANSWER: I went into the trailer, it was all closed up, the windows were closed, the day was hot, I noticed the rugs were wadded up in front of the couch, I saw some blood-soaked shop rags, but I couldn't tell if it was fresh blood on the shop rags.

(4) THE RULING OF THE COURT THEREON: Defendant's objection overruled.

B. The Court erred in overruling the objection of the defendant to the admission into evidence of state's exhibit

number six (6), being the capsule containing two (2) slides, which were admitted during the direct examination of Dr. Joseph Greenlee, a witness called on behalf of Plaintiff, and in admitting the testimony of the finding by Sergeant Keith Young, of his tests made on said Plaintiff's exhibit six (6), for the reason that the Defendant objected to the admission of said evidence on the following grounds:

(1) The Plaintiff had not established a complete chain of evidence, tracing the possession of the exhibit completely and continuously to the final custodian.

(2) That there was a lack and failure of proof of identity of the Plaintiff's exhibit six (6) by each of the individuals who had custody of said exhibit during its chain of custody, and that the several witnesses could not all state that the contents of the exhibit as presented into evidence were the same as the contents contained in the capsule while in the custody of each of the said witnesses during the chain of custody.

(3) That the burden of proof to show a complete chain of custody was on the Plaintiff, and that said burden of proof was not satisfactory in that the testimony of the witnesses showed there to be a broken or missing link in the chain of custody of said exhibit, said witnesses being Indiana State Trooper Les Allegood, Indiana State Police Sergeant James McCowan, Indiana State Police Sergeant Donald Moody, Indiana State Police Sergeant Keith Young, and Dr. Joseph Greenlee, and the Court overruled said objection and allowed said exhibit and the testimony of Indiana State Police Sergeant Keith Young regarding his findings from the tests performed on the contents of said exhibit to be admitted into evidence."

The Assignment of Errors is the single specification:

"1. The Court erred in overruling appellant's Motion For A New Trial."

For the background of appellant's objection to certain testimony of the witness Betty Guthrie, on direct examination, we refer to the record:

"A. Well then I went down to Mrs. Bowers' trailer to see if she had seen Cy come home.

Q. Approximately what time was this? Do you have any idea?

A. Gee, I don't know. It was after the police had left.

Q. Well would this be before 5 o'clock—any idea?

A. Well I think when I called you, because Mr. Leas had taken her to Dr. Sneary's, and you were going to call the Doctor. And you said you couldn't get out a warrant for an arrest unless there was more proof because you couldn't, you know, swear out a warrant on just hearsay. Then I called you back and you told me, asked me, if there had been any witnesses or anything, *so I told you I would get you a witness, then I went down to Mrs. Bowers' * * *.* (Emphasis supplied)

Q. Now where does Mrs. Bowers live?

A. In the trailer just south of * * *.

Q. Right here?

A. Yes.

Q. And you went up to her trailer?

A. And I asked her if she had seen Cy come home and she said she saw Cy come home with a little granddaughter—my little granddaughter—she thought it was my little granddaughter.

Q. And did she see him leave?

A. Yes.

Q. Did you then go on over to the trailer?

Q. Not then.

Q. Did you at any time—after you talked to Mrs. Bower and found that Penny Sue had been up there what did you do?

A. *I came back and called you.* (Emphasis supplied)

Q. And then what, if anything, did you do later on?

A. *Then I went down to the trailer.* (Emphasis supplied)

Q. Did you go in?

A. Yes, Sir.

Q. When you went to the trailer what, if anything, did you see—anything unusual? About the trailer or * * *?

A. Yes, it was all closed up * * *.

MR. WHITELEATHER: You Honor, at this time I will object to anything this witness has to say regarding the inside of that trailer as being a reasonable search of the trailer which is not owned by her and which she had no right to be in the trailer at that time.

A. My husband owned it—didn't I have any right?

MR. THRAPP: Your Honor, I think that wouldn't be unreasonable seizure to a person other than a police officer.

THE COURT: That's true. I thought the question was, 'Did you notice anything about the trailer as to whether it was closed up.' I thought that was the question.

MR. THRAPP: I asked her if she noticed anything unusual about the trailer at the time.

THE COURT: You didn't say anything about it being closed up?

A. I said that.

THE COURT: Oh, you said that. I will overrule the objection. Go ahead, answer the question.

A. It was all closed up, and that's unusual because even in the wintertime he is warm blooded.

Q. You mean the windows were closed?

A. Yes, Sir.

Q. Was that shut up tight? Now what kind of a day was that, was that a cold day?

A. No.

Q. Was it hot?

A. Yes.

Q. That was the first thing you noticed that was unusual. Was there anything else that you noticed? At the trailer or inside the trailer?

A. Well, it was a mess. The rugs were all torn up and * * *.

MR. WHITELEATHER: Excuse me, but may I make the objection at this time that any evidence or testimony by this witness as to the condition of the inside of the trailer amounts to testimony by a person who was not authorized in the trailer and constitutes an unlawful search of the trailer regarding the condition and whatever was found inside the trailer.

THE COURT: Overruled the objection. You may answer." (Tr. pp. 196-199)

The majority opinion attempts to gloss over the appellant's objections to the testimony of the witness Guthrie on the theory that they were untenable and are unavailable because

there was another and tenable ground which might have been named but was not. Citing: I Wigmore on Evidence § 18 at 339-40 (1940). Such opinion also states, "(t)he Courts in this state have applied the rule on numerous occasions. See e.g. *Automobile Underwriters* v. *Camp* (1940), 217 Ind. 328, 27 N. E. 2d 370; *Michigan City* v. *Werner* (1916), 186 Ind. 149, 114 N. E. 636; *Stout* v. *Rayl* (1896), 146 Ind. 379, 45 N. E. 515."

With reference to the above we deem it unnecessary to say more than the record discloses, that the witness called the prosecuting attorney at least three (3) times (Tr. l. 32, p. 196, Tr. l. 4, p. 197, Tr. l. 22, p. 197) before she ventured to enter and search the trailer unlawfully. The actions and evidence of this witness show with crystal clearness that she was the pawn and agent of the State as embodied in the prosecuting attorney. The court committed error in overruling the motion for new trial. *Machlan* v. *State* (1966), 248 Ind. 218, 225 N. E. 2d 762.

With reference to the cases cited in the majority opinion following the citation from Wigmore, I point out that they are civil cases where a different rule applies that in criminal cases. Their use here is inappropriate, of no value, and add nothing to the opinion.

We now turn our attention to the second specification of the motion for a new trial, the admission into evidence of State's Exhibit No. 6 and the admission of testimony of the findings of Sergeant Young on his tests of Exhibit No. 6.

Appellant's contention that the court erred in overruling his objection to State's Exhibit No. 6 in evidence and in not striking the testimony of Sergeant Young is as follows:

"The evidence in this cause most favorable to the appellee, together with all favorable inferences to be drawn therefrom, indisputably points out that the Trial Court committed an error of law at the trial of this cause by allowing into evidence, over the timely objection of appellant, appellee's Exhibit #6, being a capsule containing two glass

slides, which slides preserved vaginal smears taken from the alleged raped victim. In connection therewith, the trial court also committed an error of law by not, after a timely motion to strike by appellant, striking the previous testimony of appellee's expert witness, Keith J. Young, which testimony consisted of the results and findings of the tests performed by said witness on the two slides contained in the capsule which was appellee's Exhibit #6. The basis for appellant's objection to the admission of Exhibit #6 and appellant's motion to strike the previous testimony of witness Young, and the specific error of law committed by the Trial Court in overruling appellant's combined objection to the admission of Exhibit #6 into evidence and motion to strike was that a proper foundation showing a complete chain of evidence establishing the identification of said Exhibit #6 had not been proven or shown by the appellee at the time of its introduction into evidence, or previous to the time when the case went to the jury, and lacking said proper identification the plaintiff's Exhibit #6 was not shown to be relevant to the issues of this case. Inasmuch as substantially the same questions of relevancy and proper foundation of identification are raised by appellant's objection to the admission into evidence of appellee's Exhibit #6 and the motion to strike the previous testimony of witness Young, both of said appellant's objection and motion to strike are here grouped and supported by one argument.

The specific question, objection of appellant, court ruling, answer, motion to strike by the appellant, court ruling on the motion and answer are in the following words, to-wit: (Tr. p. 285, l. 30)

Q. What did you find by your examination?

MR. WHITELEATHER: Your Honor, at this time I would again like to make the objection which I previously made, which is that any testimony of this individual as an expert witness about his findings of those slides, is immaterial and irrelevant to the issues in this case until it is shown that these slides have any relevancy to the issues of the case, to the parties involved, or to the question of the chain of custody of the slides and also of the individual who took the slides who has not testified as having taken them and where they were taken and who they were taken from.

MR. THRAPP: Your Honor, subject to connecting this up later by the person who actually took the slides, I think it would be proper that he be allowed to testify

based on the fact it would be connected as to who took the slides and from whom. The Doctor is not available at this time * * * (recess)

THE COURT: I believe the last question was of this witness, 'What was the result of your test?' to which there was an objection made. At this time the Court will overrule the objection. You may answer the question.

A. I found through miscroscopic examination of the slides submitted intact spermatozoa.

MR. WHITELEATHER: Your Honor, at this time I would like to ask that that question be stricken from the record and the Court to admonish the jury to disregard his answer for the following objection, and that is that even though there is a condition that the showing of who took the specimen, from where, what time and to whom it was originally given to start the chain of custody—that his testimony is conditioned upon that being shown eventually in this trial. Nevertheless, the defense objects on the ground that even if that be shown and correctly shown, that there is a broken link or missing link in the chain of custody of that exhibit, which would be State's Exhibit No. 6, I believe, in that there is no showing as to the chain of custody of the exhibit from the hour of 12:00 at night on September 1, to 8:00 a.m. on September 2d; there is no showing of the identity by any of the previous witnesses on the stand as to the contents of the capsule and as to whether the contents of the capsule which is now being testified about are the same contents as was in the capsule September 1, 1967, or thereafter when each of these witnesses had the custody of that specimen or the capsule; that, therefore, the capsule and any testimony of findings of what was contained in the capsule are immaterial and irrelevant to this case and should be not allowed as the basis of an expert's testimony in this case.

MR. THRAPP: Your Honor, I believe all this goes to the weight of the evidence not the admissibility at this point.

MR. WHITELEATHER: Your Honor, I further say, it is not a question of whether it goes to the weight of the evidence or the credibility of the evidence, rather the burden of proof and the strict burden of proof is placed upon the plaintiff in this case to show the necessity, the absolute necessity, to establish a complete chain of

evidence tracing the possession of this article or this exhibit from the original taking of the exhibit from a person to the placing of the exhibit in the hands of this expert witness for him to testify regarding his testing of the contents of the exhibit. And that burden of proof has not been shown, there is at least an eight-hour gap as to who had it then, as to what took place then, it can not be presumed that good practice by the Indiana State Police was exercised during that period of time. That is the missing link and broken link in this chain of custody as to who had it. You cannot presume that it was not tampered with or that somebody else had possession of that during that eight-hour period. It must be shown conclusively where the exhibit was, that capsule was, at each minute, or who had control of the capsule. The element of control is missing here because you have a period of time from eight o'clock or from 12:00 at night until 8:00 the next morning in which this capsule was left unguarded with nobody in control of the same, and therefore, there can be no evidence as to what took place, who had the control of it during this time, and it must be presumed that there could have been tampering or anything else that could have happened.

THE COURT: I will overrule the objection.

Q. Now you stated that your findings were intact spermatozoa. Tell the jury what intact spermatozoa means.

A. That is the full organism consisting of basically the head and the tail.

In order to prove and show a proper foundation showing a complete chain of evidence establishing the identification of Exhibit #6, appellee placed on the witness stand, at the trial of this case, five witnesses, each of whom testified that they had had, at one time, possession and custody of said Exhibit #6. The five witnesses, in the order of their testimony at the trial, and the substance of their testimony, were, to-wit:

1. Les Allegood, who testified that he had received the capsule from Dr. Joe Greenlee on the early evening of September 1, 1967, and placed the capsule on the Post Commander's desk at the Indiana State Police Post, Ligonier, Indiana, at approximately midnight of the night of September 1, 1967. (Tr. p. 270)

2. James J. McKowan, who stated he believed, but was not positive, that he took some 'evidence' from the Post Commander's desk to the office of Sergeant Donald E.

Moody, in the State Police Post at Ligonier, Indiana, during the morning of September 2, 1967. (Tr. p. 274)

3. Donald G. Moody, who stated that he found the capsule on his desk at 8:00 a.m., September 2, 1967, and transferred it to Keith J. Young at Indianapolis, Indiana. (Td. p. 276)

4. Keith J. Young, who testified that he received the capsule from Donald G. Moody on September 6, 1967, and subsequently made tests on the two slides contained in the capsule, which tests show the presence on one slide of spermatozoa, and to which he testified at this trial. Further, the capsule was in the possession of Keith J. Young until the time of the first trial of this cause, and in the possession of the Whitley Circuit Court until the second trial of this cause. (Tr. 283)

5. Dr. Joe Greenlee, who took the vaginal smears from the alleged rape victim on the evening of September 1, 1967, and placed the smears on two glass slides and deposited the two slides in the capsule which eventually were marked appellee's Exhibit #6. (Tr. p. 300)

At the time the fourth witness in the chain of evidence, Keith J. Young, (and before the testimony of Dr. Joe Greenlee, the originator of the smears) was asked what the findings of his examination were, the appellant objected on the ground that the answer would be irrelevant and immaterial to the issues of the case until it was shown where the contents of the capsule originally came from, and that a proper identification had been made of this capsule as being relevant to the issues of the case. The Court overruled this objection by the appellant and allowed the witness Young to answer the question, which answer was that he had 'Found through microscopic examination of the slides submitted intact spermatozoa.' Immediately after said answer by the witness Young, the appellant moved that the answer be stricken and the jury admonished to disregard the answer. The court overruled said motion to strike. After the examination of witness Young, the appellee's fifth witness to testify, pertaining to the chain of evidence, Dr. Joe Greenlee, testified concerning the originality and actual contents of the capsule being Exhibit #6. The appellee then offered, during the testimony of Dr. Greenlee, said Exhibit #6 into evidence, at which time the appellant objected to said admission of Exhibit #6 and also moved the court to strike the previous testimony of witness Young, said combined appellant's objection and motion to strike being in the following words, to-wit:

MR. THRAPP: The State now offers in evidence State's Exhibit #6.

MR. WHITELEATHER: At this time, your Honor, the defense would like to raise the objection which was previously made regarding the introduction of this Exhibit #6 into evidence on the ground that it is immaterial, irrelevant because of the lack of showing by the Prosecution of an unbroken chain of custody of this Exhibit, a lack of the showing of identity by each of the witnesses of the contents of this exhibit, and whether the contents presently contained in this exhibit are the same contents as those taken by Dr. Greenlee and carried on through this chain of custody; that the expert witness testimony from Sergeant Young be stricken and the Court admonish the jury to disregard any of his testimony on the grounds and because of the objection just stated and the inability on behalf of the prosecution to show a complete chain of custody from the time this was taken to the time it reached the hands of the expert witness, and also the lack of evidence of any kind by the Prosecution as to who had the control of this evidence or Exhibit from the time it reached Sergeant Young's hand until produced here this morning—where it was during this time, that is missing; there is also the statement from Sergeant Moody when asked when he received the capsule his statement was that he received the capsule on his desk on September 2, 1968, and there has been no showing this was the wrong date on his part or an error on his part, and there is a complete lack or breakdown on the chain of custody. For that reason the defense would object to the introduction of this exhibit, and asks that any testimony regarding this exhibit be stricken from the record and ask that the Jury disregard any evidence by any of the witnesses previous to this witness regarding the exhibit and the contents and any tests made of this exhibit.

THE COURT: Overrule the objection. It may be admitted. Exhibit exhibited to the Jury.

The trial court overruled appellant's combined objection and motion to strike and said Exhibit #6 was admitted into evidence and exhibited to the Jury." (Appellant's Brief, pp. 39-48)

This Court has, in the case of *Stallings* v. *State* (1968), 249 Ind. 110, 235 N. E. 2d 488, set forth the applicable rules and

interpretations of the evidentiary terms, "materiality" and "relevancy," namely that "The facts which the evidence tends to prove or disprove, in order to be material must relate to an issue in the case" and "the offered evidence must logically tend to prove a material fact." *Stallings* v. *State, supra.* Using said rules and their requirements of admissibility as a test and standard to the evidence in the case at hand, appellant contends that Exhibit #6 and the testimony of witness Young were not material or relevant to the issues of the case for the reason that a sufficient foundation showing a complete chain of evidence establishing the identification of said Exhibit #6 was not shown or proved in order to establish, correctly, that the said Exhibit #6 was related to any issue in this case. More specifically, the appellant contends that by certain deficiencies to be discussed the appellee did not properly identify, and thus sufficiently show, that the contents of said Exhibit No. 6, namely the capsule and two slides preserving the vaginal smears, as introduced and admitted into evidence, were the same contents as placed in the capsule by the originator of same, Dr. Joe Greenlee, and/or were vaginal smears of a person connected with the case, and lacking said proper identification, the contents as admitted and the tests made on said contents were irrelevant, and too remote, uncertain and conjectural to the issues of the case to be properly admitted into evidence. *Stallings* v. *State, supra; State* v. *Lee* (1949), 227 Ind. 25, 83 N. E. 2d 778.

"When objects, such as * * * parts taken from a human body, are produced in Court and used there as an exhibit or made the basis for the testimony or report of an expert or officer, the identity of the object produced with the object taken from the body must be proved." 29 Am. Jur. 2d Evidence, § 775, p. 845, (1967), citing *McGowan* v. *Los Angeles,* 100 Cal. App. 2d 386, 223 P. 2d 862 (1950).

In order to provide the proper and adequate predicate or foundation for introducing said exhibit and test findings into evidence, the appellee was required to establish, at least as far as practicable, a complete chain of evidence, tracing possession

of the capsule and contents from the time the specimen was taken from the body of the alleged rape victim to the final custodian by whom it was analyzed, witness Young. *Robinson v. Life and Cas. Ins. Co.* (1961), 255 N. C. 669, 122 S. E. 2d 801. Also, 21 A.L.R. 2d 1231, said annotation being entitled "Proof Of Identity Of Person Or Thing Where Object, Specimen, Or Part Is Taken From A Human Body, As Basis For Admission Of Testimony Or Report Of Expert Or Officer Based On Such Object, Specimen, Or Part."

In order to prove a proper identification of Exhibit #6, the capsule must be properly identified by each of the five witnesses through whose hands and custody the capsule passed, so as not to leave any links missing in the chain of evidence. There can be no hiatus to any extent in the chain of evidence, if so proper identification has not been shown. *State* v. *Boehne* (1968), 71 Wash. 2d 621, 430 P. 2d 527.

In addition, not only can it not be presumed that witness McKowan performed his official duty and had the proper custody and possession of the Exhibit #6 and delivered it to witness Moody, but rather the testimony of witness McKowan points out that he did not perform his official duty in the early morning hours of September 2, 1967. This witness testified that it is normal State Police procedures to keep a record of the handling and custody of any evidence, (Tr. p. 276, l. 30), and that on this record would be placed the information, if any, of when the evidence went from one unit to another unit, from a unit to the evidence room, or from one officer to another (Tr. p. 277, l. 3). Even more specifically, witness McKowan testified that when an object is brought into the State Police Post, the record should show who had the custody of it and where the custody of the object was at all times. (Tr. p. 277, l. 11) Yet witness McKowan admitted that he never recalled signing anything or placing his identification on the record or custody paper (Tr. p. 277, l. 15), and no custody paper or record was ever introduced by the appellee into evidence at the trial. Therefore, even if it would be valid

to allow a presumption as to the performance of official duty, witness McKowan's testimony points out the very fact that this official duty was not performed from the time of midnight on the night of September 1, 1967, until 8:00 a.m. on September 2, 1967.

In summary of the three points of argument of the appellant pertaining to the testimony of witness McKowan, *supra,* there is a definite missing link or hiatus in the chain of evidence establishing the identification of Exhibit #6, and as a result of this missing link and insufficient identification, the exhibit as offered and admitted into evidence was irrelevant to the issues of this case, it was too remote, too uncertain, and too conjectural to be properly admitted into evidence, as was the testimony of witness Young regarding the tests which he made on the contents of the capsule which he received at the end of the chain of evidence. *Stallings* v. *State, supra.*

In connection with the requirement of the chain of evidence method of establishing identification is the question of what degree of proof is required of the party attempting to prove such identification. Certainly, the burden of proof rests upon the proving party, in this case the appellee, and in that this is a criminal case, the identification of Exhibit #6 must have been made and proven beyond a reasonable doubt, because the identification and tests resulting therefrom were offered and received as evidence constituting proof of the necessary essential, and constituted elements of the crime charged. *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6. In the case of *Easton* v. *State, supra,* at page 343, this Court stated that a material allegation or an issuable fact in a criminal prosecution requires more evidence than proof by a mere preponderance of the evidence. The Court's consideration is also called to the ruling in the case of *Woolley v. Hafner's Wagon Wheel, Inc.* (1961), 22 Ill. 2d 413, 176 N. E. 2d 757, at page 760 where the Court had before it the issue of whether the foundation required to admit the analysis of a blood test into evidence was the same in both civil and criminal cases.

The Illinois Supreme Court ruled in that case that a different degree of proof is required in civil cases than in a criminal case, namely, that in a criminal case, the State must prove its case and each and every element therein beyond a reasonable doubt. *Woolley* v. *Hafner's Wagon Wheel, Inc., supra.* The Court's ruling would indicate that the specific question of the proper foundation required for the admission into evidence of a specimen taken from a human body requires proof of a proper identification of said object beyond a reasonable doubt. In relation to the case at hand, appellant contends that appellee was required to prove the identification of Exhibit #6 by a standard of proof beyond a reasonable doubt, which standard of proof was not met by the appellee, taking into consideration only that evidence most favorable to the appellee.

The appellant next argues that the trial court erred in admitting said exhibit into evidence and not striking the testimony of witness Young because of a lack of proper identification of said Exhibit #6 in this three of the five witnesses in the chain of custody could not identify the contents of the capsule, namely, the two slides, and state with any certainty that the slides as contained in said capsule at the time of the trial were the same contents and slides as in the capsule at the time that the witness had the custody and possession of same.

The witness Allegood admitted that he did not know whether the contents that were in the capsule at the time of the trial were the same contents that were in the capsule on the evening of September 1, 1967, while in his possession. (Tr. p. 273, l. 23). Witness McKowan did not even actually recall the capsule, let alone the contents of the capsule at the time of trial being the same contents as in the early hours of September 2, 1967. Witness Moody also could not identify the contents of the capsule and state that the slides contained in said capsule on his desk on the morning of September 2, 1967, were the same contents and slides as in the capsule placed before him for identification at the time of the trial. (Tr. p. 282, l. 24)

As a result, only two of the five witnesses, Dr. Joe Greenlee and Keith J. Young, testified as to the contents of the capsule at the time of trial being the same contents as in the capsule at the time that they had the custody and possession of same. Appellant, therefore, argues that when only two of the five individuals constituting a chain of evidence can properly identify the contents of the object or exhibit at the time of trial as being the same contents as when they had the original custody and possession of same, that the identification is faulty and not sufficient in lieu of the requirements and rules as set forth in *Stallings* v. *State, supra,* and *McGowan* v. *Los Angeles, supra.*

In summary, because of the hiatus in the chain of evidence and other insufficiencies in the establishing of a proper foundation for the identification of appellee's Exhibit #6, the same should not have been admitted into evidence, and the testimony of Keith J. Young regarding his tests made on same should have been stricken from the evidence by the trial court in that the relevancy of said Exhibit #6 and testimony of Keith J. Young to the issues of the same was not shown.

The cause should be reversed and remanded to the trial court with instructions to sustain appellant's Motion for a New Trial.

DeBruler, J., concurs.

NOTE.—Reported in 260 N. E. 2d 579.